## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **ORDER GRANTING THIRD-PARTY** |
| Plaintiff, | ) | **FREDRIKSON & BYRON, P.A.'S MOTION** |
| | ) | **TO QUASH AND FINDING AS MOOT** |
| v. | ) | **UNITED STATES' MOTION TO QUASH AND** |
| | ) | **DEFENDANTS' EX PARTE APPLICATION** |
| Steven Dornsbach and Kamida, | ) | **FOR RULE 17(C) SUBPOENA DUCES TECUM** |
| Inc., | ) | |
| | ) | |
| Defendants. | ) | Case No. 22-cr-00048 |

Before the court are: (1) Third-Party Fredrikson & Byron, P.A's ("Fredrikson") Ex Parte Motion to Quash Subpoena (Doc. No. 94); (2) Defendants's Ex Parte Application for Rule 17(c) Subpoena Duces Tecum (Doc. No. 97); and (3) the United States' Motion to Quash Defendants' Subpoenas (Doc. No. 109). For the reasons that follow, Fredrikson's motion is granted and both Defendants' ex parte application and the United States' motion are deemed moot.

## I.   BACKGROUND

### A.   Events Giving Rise to Defendants' Charges

The United States investigation and prosecution of Ronnie Taggart ("Taggart"), an employee of the City of Plymouth, Minnesota, eventually led them to the Defendants in the instant case: Kamida, Inc. ("Kamida") and its Chief Executive Officer, Steven Dornsbach ("Dornsbach").

Taggart was involved in a bid rigging scheme; he provided municipal contracts to contractors in exchange for bribes and kickbacks, flouting Minnesota law and municipal policies that governed the bidding process. He was eventually charged by way of Information with wire fraud in violation 18 U.S.C. §§ 1343 and 1346. See United States v. Taggart, Case No. 18-cr-93 (D. Minn. 2018), Doc. No, 1. He entered a guilty plea to this charge in May 2018. See id. at Doc. No. 10.

1

The United States traced an email sent by Taggart as a part of the aforementioned scheme to Dornsbach. (Doc. No. 65, p. 5). In this email, Taggart requested a "Comp bid from your guy for [his] records in case [he] gets audited." The "guy" referenced by Taggart turned out to be Clarence Olson ("Olson"). See Taggart, Case No. 18-cr-93 (D. Minn. 2018), Doc. No. 10, pp. 4-5.

On August 11, 2021, Olson was charged with the one count of conspiracy to restrain trade in violation of the Sherman Act, 15 U.S.C. §1. See United States v. Olsen, Case No. 21-cr-00172-ECT (D. Minn. 2021), Doc. No. 1, ¶ 2. On September 27, 2021, he appeared before Judge Eric. C. Tostrud, waived Indictment, pleaded guilty to the offense charged in the Information, and admitted to the allegations contained therein pursuant to a plea agreement that he had entered into with the United States. See id. at Doc. Nos. 11, 13.

Olson wrote the following letter to Judge Tostrud on October 12, 2021, in anticipation of sentencing (which has yet to occur):



(Doc. No. 49-3).

On March 9, 2022, a federal grand jury returned an Indictment charging Dornsbach and Kamida with one count of conspiracy to restrain trade in violation of the Sherman Act, 15 U.S.C. § 1. (Doc. No. 1). The Indictment alleges in a nutshell that they conspired with Clarence Olson, an employee of "Company A," and other unnamed co-conspirators to suppress or eliminate competition by rigging bids for concrete repair and construction projects in Plymouth and other Minnesota municipalities over a span of approximately five years. (Id.)

According to the Indictment, Kamida was a Minnesota corporation engaged in the business of concrete repair and construction. (Id.). Dornsbach submitted quotes or bids on concrete repair and construction projects in a number of Minnesota municipalities on Kamida's behalf. (Id.). He then asked Olson to intentionally submit losing quotes or bids on some of these same projects on "Company A's" behalf in order to give the municipalities the false impression that "Company A," was competing for them. (Id.). In so doing, he and Olson were able to ensure the municipalities' acceptance of Kamida's quotes or bids. (Id.).

**B.      Defendants' Discovery Dispute with the United States**

On May 18, 2022, Defendants filed a motion requesting, among other things, an order compelling the United States to produce all communications and documents constituting or containing communications between it and Olson and/or Olson's attorney. The United States had provided Defendants with summaries of its communications with Olson's counsel along with some documents with and without redactions. (Doc. No. 69). Defendants asserted that, by failing to produce all such communications and documents in its possession, the United States had violated its obligations under Fed. R. Civ. P. 16 and *Brady* and improperly withheld impeachment evidence with respect to Olson.

Magistrate Judge Wright denied Defendants' request.  (Doc. No. 81).  In so doing, she observed that Rule 16 does not allow for the discovery of statements other than those made by defendants, and that neither *Brady* nor *Giglio* created an obligation to disclose impeachment evidence for a prospective defense witness such as Olson's counsel.[1]  She also accepted the United States' representation–that it had provided the substance of its communications with Olson's counsel that could be covered by *Brady*–as Defendants had provided nothing but speculation to counter it. She did, however, warn the United States that it was "on notice as to the redacted communications before the Court, or any other communications not disclosed with respect to Olson and/or his legal counsel, and encourage[d] [it] to review any such communications to ensure that any substance that should be disclosed under *Brady* or its progeny is disclosed in a timely manner."  (Id. at p. 21).

Defendants objected to Magistrate Judge Wright's decision, reasserting in relevant part that Rule 16 obligated the United States to produce all of its communications with Olson and his attorney. (Doc. No. 85).  On November 9, 2022, Judge Traynor issued an order denying Defendants' objection.  (Doc. No. 156).  In the order he reiterated: (1) Rule 16 does not require the disclosure of a co-defendant's or co-conspirator's statements; and (2) communications between the United States and Olson's counsel were not discoverable because the United States had represented that it did not intend to call Olson's counsel as a witness.  (Doc. No. 156).  He further opined that the summaries given by the United States to Defendants of its communications with Olson's attorney "provide the Defendants adequate information for impeachment or direct examination of Olson's attorney in the event Olson's attorney is called as a witness at trial."  (Id. at p. 11).

---

[1]  In responding to Defendants' request, the United States represented that it would not be calling Olson's counsel as a witness.  (Doc. No. 63 at 28).

4

### C.       Rule 17(c) Subpoenas Duces Tecum

On August 19, 2022, Defendants served Fredrikson, the law firm representing Olson, with a subpoena duces tecum requesting the production of "all documents related to the representation provided by your law firm . . . to Clarence Olson, Maribeth Olson, and C. Olson Concrete" from January 1, 2019, on. (Id. at pp. 6 and 8).   At some point they also served C. Olson Concrete, Clarence Olson, Maribeth Olson, Andrea Olson, and Tony Olson with a  subpoenas duces tecum requesting the production of "all documents related to the bids such subpoena respondent claims were rigged with, for, or in conspiracy with, Defendants."  (Doc. No. 97, p. 7).

Fredrikson contacted Defendants to discuss, among other things, its concerns regarding the subpoena's scope, its obligations under Minnesota Rule of Professional Conduct 1.6, attorney-client privilege, and attorney work product. They conferred but were unable to reach a mutually agreeable resolution of this matter.

On August 26, 2022, Fredrikson filed a motion to quash Defendants' subpoena on the grounds that it failed to identify or describe the documents being requested with the requisite specificity, was otherwise unreasonable and oppressive, and appeared calculated to circumvent Magistrate Judge Wright's order denying their earlier motion to compel production of these documents from the United States.

On August 26, 2022, Defendants filed an Ex Parte Application for Rule 17(c) Subpoena Duces Tecum.  (Doc. No. 97).

On August 31, 2022, the United States filed a motion to quash the subpoenas served by Defendants on Fredrikson, C. Olson Concrete, Maribeth Olson, Andrea Olson, and Tony Olson on the grounds that they are unenforceable because they do not bear the Clerk's office's seal, were

issued without the Court's approval, and are seeking documents that Magistrate Judge Wright had previously determined were not discoverable under Rule 16.

Fredrikson's and the United States' motions have now been fully briefed and are ripe for consideration.

## II.    <u>RULE 17(C) STANDARD</u>

Rule 17(c) of the Federal Rules of Criminal Procedure provides that a "subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence."  Fed. R. Crim. P. 17(c)(1).

Rule 17(c) was not intended to serve as a discovery device for criminal cases.  <u>United States v. Nixon</u>, 418 U.S. 683, 698 (1974); <u>see also</u> <u>United States v. Agboola</u>, No. 00-100-JRT/FLN, 2001 WL 1640094, at *5 (D. Minn. Oct. 31, 2001) ("Rule 17(c) is not a broad adjunct to the discovery provisions of Rule 16, and may not be used merely for 'ferreting out information which may either be relevant or admissible.'").  Instead, Rule 17(c) seeks to expedite a trial by providing a time and place before trial for the inspection of subpoenaed materials.  <u>Id.</u> at 698–99; <u>see also</u> <u>United States v. Bueno</u>, 443 F.3d 1017, 1026 (8th Cir. 2006).

To gain access to the desired documents, the moving party must show that the subpoenaed documents are: (1) relevant; (2) admissible; and (3) identified or described with adequate specificity. <u>United States v. Wilkens</u>, No. CRIM. 12-74 MJD/LIB, 2012 WL 2885364, at *1 (D. Minn. July 13, 2012) (citing <u>Nixon</u>, 418 U.S. at 700).  "Notably, [t]hese specificity and relevance elements require more than the title of a document and conjecture as to its contents." <u>Id.</u> (quoting <u>United States v. Hang</u>, 75 F.3d 1275, 1283 (8th Cir.1996)); <u>United States v. Bradford</u>, 806 F.3d 1151, 1155 (8th Cir.

2015) ("[A] subpoena should not issue based upon a party's mere hope that it will turn up favorable evidence." (internal quotation marks omitted)).

Even when the moving party has made the requisite showing of relevancy, admissibility, and specificity, a court must still consider other factors, including whether: "(1) the materials could be procured through other means, before trial, by the exercise of due diligence; (2) the party cannot adequately prepare for trial without advance production of the documents, and the failure to obtain the documents may tend to unreasonably delay the trial; and (3) the request for the materials is made in good faith and not as a general 'fishing expedition." Nixon, 418 U.S. at 699–700. A court may quash or modify a subpoena for the production of documents, if producing the documents would be unreasonable or oppressive or if the subpoena calls for privileged matter. Fed. R. Crim. P. 17(c)(2).

## III.   DISCUSSION

### A.   Fredrikson's Motion

Defendants subpoena contains a single request for the productions of all documents dating back to January 1, 2019, that relate to Fredrikson's representation of Olson:

> REQUEST NO. 1: Produce all documents related to the representation provided by your law firm, Fredrikson & Byron, P.A., to Clarence Olson, Maribeth Olson, and C. Olson Concrete. This request does not intend to request privileged information, but it includes all documents you provided to, or exchanged with, the U.S. Department of Justice's Antitrust Division.

(Doc. No. 96-1).

Fredrikson questions whether the documents requested by Defendants meet Rule 17's relevance and admissibility requirements in light of Magistrate Judge Wright's order denying Defendants' motion to compel. Fredrikson further asserts that Defendants' subpoena is, in any event, unreasonable and oppressive for the following reasons. First, Defendants' request for all documents

7

related to its representation lacks specificity and is extremely broad, giving it the appearance of a fishing expedition. Second, Defendants have another source–the United States–from which it can directly obtain some or all of the documents they seek. Third, Fredrikson would be required to prepare a privilege log, which would be costly and burdensome. Fourth, Fredrikson has not received consent to disclose any information related to its representation of Olson and others and therefore cannot produce the requested documents without violating Minnesota Rule of Professional Conduct 1.6, which provides in relevant part that "a lawyer shall not knowingly reveal information relating to the representation of a client." Minn. R. Prof. Conduct 1.6(a).

Defendants not surprisingly maintain that their request is specific and, in so doing, emphasize that they are not seeking privileged communications. They further emphasize that in followup communication with Fredrikson they clarified that they are seeking two categories of documents: (1) all communications between anyone at Fredrikson and the United States, including the Federal Bureau of Investigation's Antitrust Division, etc.; and (2) documents provided to the United States to the extent they are not included in the first category.

Next, Defendants asserted that the requested documents are necessary to impeach Olson's anticipated testimony, show that Olson had an ulterior motive for pleading guilty, and test the veracity of "Olson's claim at his entry-of-plea hearing that he was not coerced to enter his guilty plea." (Doc. No. 113 at p. 18). Citing a number of the United States' disclosures containing Olsen's counsel's assessment of her client's memory,[2] they inform the Court that they anticipate calling

---

[2] The United States provided Defendants with the following summary of its communications with Olson's counsel in a letter disclosure:

- ██████████████████████████████████████

Olsen's attorney to testify.  They go on to assert that the requested documents are admissible under the business records exception to the hearsay rule and otherwise admissible to demonstrate Olson's bias or motive to fabricate or misremember his past dealings with them.  Finally, they assert that Fredrikson's reliance on MRPC 1.6 as a basis for quashing the warrant is misplaced as MRPC 1.6 further provides that an attorney can reveal information relating to her representation of a client if necessary to comply with the law or a court order.  In so doing, they note some courts in other jurisdictions have upheld subpoenas as "other law" authorizing attorneys to disclose confidential client information.

Having reviewed the record, the undersigned is not necessarily persuaded that Defendants' subpoena is an improper end run around Magistrate Judge Wright's order.  A defendant may still be able to obtain materials not discoverable under Rule 16 by using Rule 17(c).  <u>Bowman Dairy Co. v. United States</u>, 341 U.S. 214, 219 (1951) (partially upholding antitrust defendant's subpoena directing government to produce documents, books, and objects obtained during the course of its investigation, even though such materials were not discoverable under Rule 16).  That being said,



(Doc. No. 64-3).  It also produced some of its email communications with Olson's counsel.  (Doc. No. 64-1 at p. 2 ("▮▮

9

the undersigned is still inclined to quash it.

Impeachment evidence is typically admissible,[3] but in the context of Rule 17(c), "generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." Nixon, 418 U.S. at 701.  Where the defendant's only purpose for seeking the Rule 17(c) subpoena is to obtain impeachment materials, such a justification is insufficient to require pretrial production of such materials.  See United States v. Cherry, 876 F. Supp. 547, 553 (S.D.N.Y. 1995); see also United States v. Hughes, 895 F.2d 1135, 1146 (6th Cir.1990) (quashing Rule 17(c) subpoena of documents sought for impeachment purposes); United States v. Fields, 663 F.2d 880, 881 (9th Cir.1981) (district court's issuance of Rule 17(c) subpoena was abuse of discretion where only evidentiary use of materials sought was impeachment of witnesses); United States v. Cuthbertson, 651 F.2d at 195 (Rule 17(c) subpoena improperly sought materials whose only evidentiary use was for impeachment purposes); United States v. Giampa, No. 92 Cr. 437 (PKL), 1992 WL 296440, at *3 (October 7, 1992) (defendant was not entitled to production of impeachment evidence before trial through means of Rule 17(c) subpoena)).  This appears to be the case here; they make it clear in their response to the motions to quash that they intend to call Olson's attorney if necessary to impeach Olson and that "the requested documents are necessary to impeach Olson's anticipated testimony."  (Doc. No. 113 at p. 18).

Defendants have failed to establish with sufficient specificity the evidentiary nature of the requested materials.  By requesting all of Fredrikson's communications with the United States and

---

[3]  It is not given that the Court will find admissible the impeachment evidence Defendants are requesting.  Defendants are not communications to impeach Olson's counsel, assuming that she testifies.  Rather, they make it clear that they are seeking these materials to impeach Olson himself.

all the documents Fredrikson has sent to the United States in connection with its representation of Olson, Defendants have cast a very large net. Their effort to clarify the two categories of documents they are seeking is not particularly helpful. Significantly, they do not hone in on or identify any specific documents or communications that they want, have not otherwise indicated what the documents contain, and have not articulated exactly how the documents they are seeking will impeach Olson. Rather, they disclaim interest in any information that may be privileged and then go on to speculate that the remaining documents may contain evidence or new material they could use to impeach Olson. In so doing they appear to be seeking confirmation of what they have already received in discovery or possibly discover additional documents. The law is clear, however, that a Rule 17(c) subpoena is not to be used as a discovery device. See Nixon, 418 U.S. at 698

The lack of specificity aside, the undersigned finds the subpoena oppressive. By all accounts Defendants are in possession of Olson's plea agreement, statements made by Olson that are in the United States' possession, at least some of the email exchanges between Olson's counsel and the United States, and Olson's counsel's assessment of Olson's faculties. Consequently, they cannot credibly maintain that they are unable to adequately prepare for trial without subpoenaed documents. Moreover, as they have already been provided with copies of documents by the United States that implicate Brady along with summaries of the substance of counsel's communications with the United States, the burden on Fredrikson to produce these documents and assemble a privilege log is unnecessary and unreasonable. Fed. R. Civ. P. 17(c)(2).

There is also the matter of Fredrikson's ethical obligations to its client. MRPC 1.6 clearly prohibits it from disclosing details of its representation. The authority on which Defendants rely for the proposition that their subpoena constitutes "other law" for purposes of MRPC 1.6 and frees

11

Fredrikson to disclose communications made in the course and furtherance of its representation of Olson is not binding on this Court and the undersigned does not find it particularly persuasive given their subpoena's purpose–the gathering of possible impeachment evidence.  Accordingly, the undersigned **GRANTS** Fredrikson's motion and **QUASHES** the subpoena served by Defendants on Fredrikson.

### B.   Defendants' Ex Parte Application for Rule 17(c) Subpoenas Duces Tecum and the United States' Motion to Quash Subpoenas

As noted above, the United States has moved to quash the subpoenas served by Defendants on Fredrikson and the subpoenas served by Defendants on Olson Concrete, Clarence Olson, Maribeth Olson, Andrea Olson, and Tony Olson (collectively the "Olsons"). In addition to voicing objections similar to these expressed by Fredrikson, it asserts that Defendants' subpoenas are unenforceable because they were not sealed by the Clerk and that Defendants' failure to notify it and the Court of the subpoena requests for their issuance invalidates any right to enforce them.

Defendants respond that, contrary to the United States' assertions, their third-party subpoenas were issued by the Clerk's office and include the Clerk's seal.  They further assert that they did not require the Court's preapproval of their subpoenas and that they have in any event filed their application to serve their subpoenas.  Specifically, with respect to the subpoenas served on the Olsons, they assert that the United States' request to quash them is moot as counsel for the Olsons has already responded to the subpoenas and confirmed that they have no responsive documents.

The United States disagrees that their motion is moot as it pertains to the Olson subpoena. It asserts that the Court retains oversight over Rule 17(c) subpoenas and that "Defendants' service of subpoenas on third parties without oversight does not become proper simply because those parties did not object."  (Doc. No. 134 at p. 8).

The court appreciates the United States' position.  That being said, quashing the Olson subpoena would be symbolic at this point.  This order stands testament to the fact that the Court has retained its oversight.

Accordingly, the court finds the United States' motion  as it pertains to the Olson subpoena is moot.  The court further finds the United States' motion as it pertains to the Fredrikson subpoena moot.  Finally, it finds Defendants' application moot.

## IV.    <u>CONCLUSION</u>

Fredrikson's Ex Parte Motion to Quash Subpoena (Doc. No. 94) is **GRANTED**. Defendants' Ex Parte Application for Rule 17(c) Subpoena Duces Tecum (Doc. No. 97) and the United States' Motion to Quash Defendants' Subpoenas (Doc. No. 109) are deemed **MOOT.**  The Parties shall file proposed redactions to this Order on or before March 6, 2023.  Their filing must state whether the Parties agree as to each redaction and, if the parties do not agree, provide support for each party's position as to that redaction. The Court will then issue a redacted version of this Order, unless the Court determines no redactions are appropriate, in which case it will unseal this Order.

**IT IS SO ORDERED.**

Dated this 21st day of February, 2023.

<u>/s/ Clare R. Hochhalter</u>
Clare R. Hochhalter, Magistrate Judge
United States District Court