**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **ORDER DENYING DEFENDANTS' MOTION** |
| Plaintiff, | ) | **TO COMPEL AND FOR SANCTIONS** |
| | ) | |
| v. | ) | |
| | ) | |
| Steven Dornsbach and Kamida, | ) | Case No. 22-cr-00048 |
| Inc., | ) | |
| | ) | |
| Defendants. | ) | |

Before the court is a Motion to Compel and for Sanctions  filed by Defendants on October 4, 2022.  (Doc. No. 124).  For the reasons that follow, the motion is denied.

I.    **BACKGROUND**

On March 9, 2022, a federal grand jury returned an Indictment charging Defendants with one count of conspiracy to restrain trade in violation of the Sherman Act, 15 U.S.C. § 1.  (Doc. No. 1). The Indictment alleges that Defendants conspired with Clarence Olson and others to suppress or eliminate competition by rigging bids for concrete repair and construction projects in the City of Plymouth and several other Minnesota municipalities.  (Id.)

Olson was previously charged in an Information with one count of conspiracy to restrain trade in violation of the Sherman Act, 15 U.S.C. §1.  See United States v. Olson, Case No. 21-cr-00172-ECT (D. Minn. 2021) at Doc. No. 1, ¶ 2.  On September 27, 2021, he appeared before Judge Eric C. Tostrud and entered a guilty plea to the aforementioned offense pursuant to a plea agreement that he had entered into with the United States.  See id. at Doc. Nos. 11, 13.

Olson wrote the following letter to Judge Tostrud on October 12, 2021, in anticipation of sentencing:



(Doc. Nos. 49-3 at p. 95 and 64-2).

Between April 14 and June 8, 2022, the United States apparently made four productions of materials to Defendants. (Doc. No. 63).  Among the materials produced by the United States were the aforementioned letter, summaries of its communications with Olson's counsel, some of the records it had obtained from of the City of Plymouth, and a report or "302" in which FBI agents memorialized their investigative interview of Olson.  (Doc. Nos. 64-2 through 64-5 and 147).

According to Defendants, they were advised by the United States during a May 11, 2022, meet-and-confer that it had withheld approximately 150,000 documents it had obtained from the City of Plymouth on privilege grounds.  (Doc. No. 50 at ¶ 11).

On May 18, 2022, Defendants filed a Motion for Discovery Pursuant to Federal Rules of Criminal Procedure 16(b), 12.1, 12.2, 12.3, and 26.2.  (Doc. No. 44).  They sought, among other things, the production of all communications between the United States and Olson's counsel as well as the 150,000 City of Plymouth documents withheld by the United States.

On June 23 and August 3, 2022, the United States apparently produced additional materials to Defendants. (Doc. No. 145 at p. 4).

On June 27, 2023, Magistrate Judge Elizabeth C. Wright convened a hearing on Defendants' motion.  (Doc. No. 76).  In their brief in opposition to the motion and at the hearing, the United States asserted that it had only sequestered 1,672 of the documents it had obtained from the City of Plymouth, that it had identified these documents  after conducting a keyword filter using search terms provided to it by the City of Plymouth, and that the production of these documents was foreclosed by the attorney-client privilege belonging to the City of Plymouth.  (Doc. Nos. 63).  It further asserted that it had produced the substance of its communications with Olson's counsel that could be covered by *Brady*.  (Id.).  Conversely, the Defendants asserted  that City of Plymouth had waived any claim of privilege and that they were entitled to the United States' communications with Olson's counsel as such communications were essential to their defense in light of Olson's letter to Judge Tostrud.  (Doc. No. 44).

On July 27, 2022, Magistrate Judge Wright issued an order denying Defendants' motion. (Doc. No. 81).  She declined to require the United States to produce the sequestered documents, noting that the City of Plymouth had not been afforded an opportunity to weigh in on privilege issue and that Defendants could subpoena these documents from the City of Plymouth.  She further concluded that the United States was neither required by Rule 16 to disclose statements from a co-conspirator nor obligated by either *Brady* or *Giglio* to disclose impeachment evidence regarding Olson's counsel.  She also accepted the United States' representation that it had produced the substance of its communications with Olson's counsel that could be covered by *Brady*.  She did, however, put the United States "on notice as to the redacted communications before the Court, or

any other communications not disclosed with respect to Olson and/or his legal counsel, and encourage[d] [it] to review any such communications to ensure that any substance that should be disclosed under *Brady* or its progeny is disclosed in a timely manner." (Id. at p. 21).

The United States later produced the 1,672 sequestered documents after the City of Plymouth apparently declined to assert any claim of privilege. (Doc. No. 126).

Meanwhile, Olson wrote the following to Judge Tostrud in a letter dated June 10, 2022:



(Doc. No. 127-1).

On August 10, 2022, Defendants filed their objection to Magistrate Judge Wright's June 27, 2022, Order. (Doc. No. 86). On August 19, 2022, they served Fredrikson & Byron ("Fredrikson"), the law firm that had been representing Olson, with a subpoena requesting the production of "all documents related to the representation provided by your law firm . . . to Clarence Olson, Maribeth Olson, and C. Olson Concrete" since January 1, 2019. (Doc. Nos. 94 and 95).

On August 26, 2022, Fredrikson filed a motion to quash Defendants' subpoena. (Id.). On August 31, 2022, the United States also filed a motion to quash Defendants' subpoena. (Doc. No. 109).

On August 31, 2022, Defendants filed a Motion to Dismiss Indictment, or Alternatively, for a Bill of Particulars. (Doc. No. 100). They asserted among other things, that statements made by

Olson in his October 12, 2021, letter undermined the United States claim that they had conspired

with him to rig bids.

On September 22, 2022, the United States provided Defendants with a copy of Olson's

second letter to Judge Tostrud.  (Doc. Nos 127 and 127-1 at p. 5)  On September 23, 2022,

Defendants contacted the United States via email, asking:

1. When did the government first receive the attached letter, i.e., the letter form
   Clarence Olson to Judge Tostrud dated June 10, 2022?
2. If the government received this letter on or around June 10, 2022, why was it just
   produced to us yesterday?
3. Has the government interviewed Clarence Olson, or any person associated with
   Mr. Olson that is not reflected in the discovery provided to us?

(Doc. No. 127 at p. 5).  The United States responded that it "did not receive the letter on June 10"

and that it "will continue to supplement discovery as necessary."  (Id.). When prodded by

Defendants to just answer their questions, it further responded: "We are cognizant of our obligations

under *Brady, Giglio*, and their progeny, and Rule 16.  Any such material will be produced as it

becomes available for production.  We decline to answer your remaining questions." (Doc. No. 127

at p. 4).

On October 4, 2022, Defendants filed a Motion to Compel and for Sanctions.  (Doc. No.

124). They requested a court order requiring the United States to produce its communications with

Olson's counsel and answer their questions regarding Olson's letter.  They further requested an

award of the expenses they incurred in bringing their motion and permission to file additional

motions as necessary.

On October 18, 2022, the United States filed a response in opposition to Defendant's Motion

to Compel and for Sanctions.  (Doc. No. 145).

On November 9, 2022, Judge Traynor issued an order denying Defendants' Objection to

Magistrate Judge Wright's July 27, 2022, Order, and in so doing affirming that (1) Rule 16 did not require the disclosures, and (2) the summaries produced by the United States of its communications with Olson's counsel provided Defendant with ample information for any direct or cross examination of Olson and his counsel.  (Doc. No. 156).

On February 17, 2023, Judge Traynor issued an Order Denying Motion to Dismiss Indictment and Granting Motion for Bill of Particulars.  (Doc. No. 195).

On February 21, 2023, the undersigned issued an order granting Fredrikson's motion to quash and deeming the United States motion to quash moot. (Doc. No. 196).

On March 7, 2023, Defendants filed an Objection to the undersigned's February 21, 2023, order.  (Doc. No. 198)

## II.   DISCUSSION

### A    Rule 16(a)(1)(E), *Brady*, and *Giglio*

In her July 27, 2022, order denying Defendants' request for the United States' communications with Olson's counsel, Magistrate Judge Wright rejected Defendants' argument that such communication was discoverable under Rule 16(a)(1)(E)(i). (Doc. No. 81).  She further rejected Defendants' argument that *Brady* and *Giglio* obligate the United States to provide them with evidence to impeach a witness it did not intend to call.  Finally, she noted that Defendants had not provided anything beyond speculation that the United States was withholding *Brady* materials from them.  (Id.).

Undaunted, Defendants make similar arguments in the instant motion.  Specifically, they assert that Olson's second letter falls within the scope of Fed. R. Civ. P. 16 and *Brady* and that the United States' communications with Olson's counsel must be produced as " [e]vidence tending to

show that Olson changed statements made to the sentencing judge in coordination with the government are directly relevant to the credibility of the government's primary witness and the only identified alleged co-conspirator." (Doc. No. 126 at p. 13). They further assert that, given Olson's impulse to send a second letter to the sentencing judge to clarify his earlier statements, these communications are material as to Olson's ulterior motives for pleading guilty and their ability to examine Olson's counsel when called by them to testify at trial. Next, they assert that one could reasonably infer from the United States' resistance to all of their attempts to obtain its communications with Olson's counsel, the timing of its disclosure of Olson's second letter to Judge Tostrud, and its generic responses/non-answers to their inquiries regarding its timing of this disclosure that it had "coordinated with Olson's counsel to obtain a change in position." (Id.).

The United States responds that "there exists no additional information derived from [its] communications with Olson's counsel that requires disclosure under *Brady, Giglio*, and their progeny," that Defendants are simply recycling previously rejected arguments in an effort to broaden its disclosure obligations beyond what Rule 16 or *Brady* and its progeny require, and have provided little more than speculation as to how its communications with counsel would be helpful to them. (Doc. No. 146). It also takes exception to Defendants' suggestion that Olson's second letter to Judge Tostrud was the product of its influence or coordination with Olson's counsel, stressing that statements made by Olson in his second letter to Judge Tostrud were consistent with statements made by Olson in a July 6, 2017, interview with the FBI that was memorialized in "302s" produced to Defendants in April 2022.

As a preliminary matter, it is worth noting that "[c]riminal defendants do not have a general constitutional right to discovery." United States v. Johnson, 228 F.3d 920, 924 (8th Cir. 2000)

7

(citing Weatherford v. Bursey, 429 U.S. 545, 559 (1977)).  Nor does the Constitution "require the

prosecutor to share all useful information with the defendant." United States v. Ruiz, 536 U.S. 622,

629 (2002). "That being said, due process and notions of fair play require the government to disclose

all evidence that is 'favorable to an accused' and 'material either to guilt or to punishment.'" United

States v. Sandoval-Rodriguez, 452 F.3d 984, 990 (8th Cir. 2006) (quoting Brady v. Maryland, 373

U.S. 83, 87 (1963)).  A defendant must otherwise point to a statute, rule of criminal procedure, or

negotiated discovery agreement to obtain material from the United States.  See Johnson, 228 F.3d

at 924.

Rule 16(a)(1)(E)(i) provides that the United States "must permit the defendant to inspect and

to copy" documents and objects "within the government's possession" which are "material to

preparing the defense."  Fed. R. Civ. P. 16(a)(1)(E)(i), Rule 16(a)(2) qualifies the extent of its

obligations as follows:

> [T]his rule does not authorize the discovery or inspection of reports, memoranda, or
> other internal government documents made by an attorney for the government or
> other government agent in connection with investigating or prosecuting the case. Nor
> does this rule authorize the discovery or inspection of statements made by
> prospective government witnesses except as provided in 18 U.S.C. § 3500.

Fed. R. Crim P 16(a)(2).

It is well settled in the Eighth Circuit that Rule 16  allows for the discovery of statements

made by defendants, but not statements made by others, including co-conspirators.  See United

States v. Mayberry, 896 F.2d 1117, 1122 (8th Cir. 1990) (holding that Rule 16 does not allow the

discovery of statements other than those of the defendant); see also United States v. Manthei, 979

F.2d 124, 126 (8th Cir. 1992) (Rule 16 "stresses that only 'statements made by the defendant' are

discoverable."); United States v. Collins, 652 F.2d 735, 738 (8th Cir. 1981), cert. denied, 455 U.S.

906 (1982) (providing that Rule 16 does not authorize the discovery or inspection of statements made by government witnesses, including those made by a co-conspirator).  Consequently, Rule 16 does not require the United States to produce its communications with Olson's counsel.

To the extent that Defendants assert they require the aforementioned communications in order to effectively examine Olson's counsel when they call counsel to testify, Magistrate Judge Wright correctly pointed out in her July 27, 2022, order that United States is not obligated by *Brady* and its progeny to  provide impeachment evidence for Defendants' own witness.  (Doc. No. 81 at pp. 18-19 (citing United States v. Garcia-Martinez, 730 F. App'x 665, 678 (10th Cir. 2018) ("[W]e are not aware of any [precedent] . . . that would have obliged the government under *Brady* to disclose information that is exculpatory—in a purely impeachment sense—with respect to a defense witness."); United States v. Kimley, 60 F. App'x 369, 371 (3d Cir. 2003) ("[T]here is no requirement that the government must disclose to the defense that material which would allow the defendant to impeach his own witness.")).

The United States has a duty under *Brady* and its progeny "to disclose to the defense all material evidence favorable to the accused, including impeachment and exculpatory evidence." United States v. Wright, 866 F.3d 899, 908 (8th Cir. 2017); Brady v. Maryland, 373 U.S. 83, 87 (1963).  Exculpatory evidence includes "evidence affecting" witness "credibility," where the witness's "reliability" is likely to be "determinative of guilt or innocence." Giglio v. United States, 405 U.S. 150, 154 (1972) "Inculpatory and exculpatory evidence can  assist in the preparation of the defendant's defense." Id.  (internal quotation marks omitted).  "'Material' means 'helpful to the defense.'"  United States v. Jean, 891 F.3d 712, 715 (8th Cir. 2018).  However, a "showing of materiality is not satisfied by a mere conclusory allegation that the requested information is material

to the preparation of the defense." Id. (internal quotation marks omitted).

The United States produced Olson's second letter on September 22, 2022, or approximately 221 before the eventual trial date.[1]  The United States has represented and continues to represent that it has provided the substance of its communication's with Olson's counsel's that could be covered by *Brady*.  It has further denied that it has had communication or coordination with defense counsel with respect to Olson's second letter and that it received Olson's second letter after it had made its August 3, 2022, disclosures.  Defendants challenge the veracity of this representation, touting Olson's second letter as evidence of the United States' failure to meet its *Brady* obligations.

The court accepts the United States' representation that it did not receive Olson's second letter until after it had made its August 3, 2023, disclosures as Defendants have provided nothing but speculation and insinuation to the contrary.  The court further notes that the clarification provided by Olson in his second letter tracks with statements made by Olson during a July 6, 2017, interview with the FBI that was memorialized in a "302."

In light of this "302," the inference drawn by Defendants–that the United States coordinated with Olson's counsel to obtain the change of position reflected in Olson's second letter–is not particularly reasonable.  Olson's second letter will surely make for an interesting cross examination of Olson and direct examination of Olson's counsel.  However, it does not in and of itself evince any coordination between the United States and Olson. Defendants were apparently provided this "302" in April 2022 and presumably aware of its contents well before Olson wrote a second time to Judge Tostrud.  Consequently, one could reasonably infer that statements made by Olson in his second

---

[1]   The trial in this case was initially scheduled for June 13, 2022.  (Doc. No. 16).  On motion by Defendants' the, Magistrate Judge Wright issued an order on May 17, 20222, cancelling the trial pending further order.  (Doc. No. 43).  On November 16, 2022, Judge Traynor issued an order rescheduling the trial for  May 1, 2023.  (Doc. No. 159).

letter did not come as a total surprise to Defendants.

The court finds Defendants have yet to present something more than speculation to counter the United States' representation that it has provided the substance of the evidence of communications with Olson's counsel that could be covered under *Brady* and its progeny. Accordingly, the undersigned denies Defendants' request for the production of the United States' communications with Olson's counsel beyond what it has already provided. In so doing, the undersigned reminds the United States of its continuing obligation under *Brady* and its progeny. The court shall now pivot to Defendants' request for sanctions.

**B.      Sanctions**

Defendants take the position that the United States failed to comply with a discovery order and otherwise manipulated discovery as evinced by the timing of its production of Olson's second letter and that the imposition of sanctions under Rule 16(d) or in the exercise of the court's inherent powers is therefore appropriate. See Fed. R. Crim. P. 16(2); see also Shlafly v. Eagle Forum, 970 F.3d 924, 936 (8th Cir. 2020) (discussing a district court's reliance on its inherent powers as opposed to the Federal Rules of Civil Procedure when sanctioning the bad-faith litigation practices of plaintiff's counsel); Roberts v. Canadian Pac. Ry. Ltd., No. 06-CV-1960 JMRFLN, 2007 WL 118901, at *1 (D. Minn. Jan. 11, 2007) (exercising its inherent powers and granting the plaintiff leave to conduct discovery regarding spoilation of evidence prior to resolving a defendant's challenge to its jurisdiction). In so doing they assert that "the record–combined with the government's refusal to answer basic questions suggests that the government caused Olson to send the June 10, 2022 [l]etter then failed to disclose that information or the letter itself to Defendants until after the motion deadline, notwithstanding being placed 'on notice' by the Magistrate Judge

months earlier." (Doc. No. 126 at p. 126). They further assert that the United States' failure to timely produce Olson's second letter prejudiced them when briefing their motion for discovery, their objection to Judge Wright's order denying their motion for discovery, their motion to dismiss/for a bill of particulars, and the motions to quash filed by Fredrikson and the United States. Finally, they assert that the instant motion may not have been necessary if the United States had been more forthcoming and answered their questions about the Olson's second letter. They ask that, in addition to requiring the United States to produce its communications with Olson's counsel, they request that the court order the United States to answer questions they had posed in their September 23, 2022, email, and award the costs and fees for filing the present motion.

Presumably in an effort to provide some context for their skepticism of the United States's representations, they cite what they perceive as the United States lack of diligence and candor with respect to their earlier motion for discovery. As noted above, they previously moved to compel the production of City of Plymouth documents that the United States withheld from them on the ground of privilege. (Doc. No. 44). After filing their motion they learned that the United States had yet to check with the City of Plymouth to see whether it was asserting its privilege. (Doc. No. 63 at p. 28). After Judge Wright had issued her decision, the City of Plymouth apparently declined to assert its privilege and the United States produced these documents.

The United States responds that there was nothing inappropriate or lacking in its response to Defendants' inquiries and that there has not been the requisite showing of either bad faith or undue delay on its part or prejudice to Defendants to warrant the imposition of sanctions. Specifically, with respect to prejudice, it asserts that *Brady* does not require pretrial disclosures by any particular date, that it produced Olson's second letter well in advance of trial, and that prejudice

in the context of *Brady* refers to fairness at trial, of which Defendants have suffered none.  Finally, it asserts that the sanctions requested by Defendants are unnecessary and otherwise inappropriate.

"If a party has committed a discovery violation, Federal Rule of Criminal Procedure 16(d)(2) provides a menu of options to remedy it: ordering additional discovery, granting 'a continuance,' excluding the 'undisclosed evidence,' and entering 'any other order that is just under the circumstances.'"  United States v. Streb, 36 F.4th 782, 787 (8th Cir.), reh'g denied, No. 20-3028, 2022 WL 2378976 (8th Cir. July 1, 2022), and cert. denied, 214 L. Ed. 2d 302, 143 S. Ct. 528 (2022).  "The choice of remedy depends on "whether the government acted in bad faith and the reason(s) for [the] delay in production"; "whether there [was] any prejudice to the defendant"; and "whether any lesser sanction [would have been] appropriate to secure future [g]overnment compliance." Id. (quoting United States v. Pherigo, 327 F.3d 690, 694 (8th Cir. 2003); see also United States v. Davis, 244 F.3d 666, 670 (8th Cir. 2001) (discussing three of the factors the court must consider when imposing sanctions).

The court has reviewed the record and finds there is a dearth of evidence to support the inference that the United States coordinated with Olson's counsel and in so doing caused Olson to send his letter.  Defendants' dissatisfaction with the United States' responses to their inquires, inquiries about this letter to Defendants' satisfaction, the United States' opposition to Defendants' first request for its communications with counsel, and the United States effort to quash their subpoenas is not evidence of its bad faith.

Insofar as Defendants may be claiming that their ability to prepare for trial has been prejudiced, it is not particularly persuasive given that they were provided Olson's second letter to Judge Tostrud approximately 221 days before the eventual trial date. See United State v. White

Horse, 316 F.3d 769 773 (8th Cir. 2003) (finding that a defendant who had access to materials well before trial had suffered no prejudice);  United States v. Almendares, 397 F3d 653, 664 (8th Cir. 2005) ("Under the rule in our circuit *Brady* does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial); United States v. Gonzalez, 90 F.3d 1363, 1368 (8th Cir. 1996) ("Where the prosecution delays disclosure of evidence, but the evidence is nonetheless disclosed during trial, *Brady* is not violated."); United States v. Andrews, No. 18-CR-149 (SRN/DTS), 2019 WL 669808, at *5 (D. Minn. Feb. 19, 2019), report and recommendation adopted, 381 F. Supp. 3d 1044 (D. Minn. 2019) ("Regardless, even if the Government has produced evidence after it should have, Andrews has not demonstrated any prejudice to his defense. His trial is, at a minimum, several weeks away and he has ample time to review the evidence the Government intends to use. To the extent it exists and is not immune from discovery, the Government has produced or will produce the material he has requested."). Defendants claim that their ability to prepare briefs in the various motions filed in this case was hampered due to the fact that they not yet received Olson's second letter is also unpersuasive.  The likelihood that there would have been a different outcome with respect to the various motions and objections filed by Defendants if they had only been in possession of Olson's second letter when preparing their briefs is beyond remote.

Finally, the court finds no basis for awarding Defendants' costs and fees associated with the present motion.  Attorney's fees in criminal cases are limited by statute to an award after trial to the prevailing party where the court finds that the position of the United States was vexatious, frivolous, or in bad faith.  United States v. Porchay, 533 F.3d 704, 711 (8th Cir. 2008).  Given the present posture of this case, Defendants cannot be fairly characterized as prevailing parties.  Moreover,

Defendants have not made the requisite showing of bad faith by the United States.

## III.   CONCLUSION

For the reasons stated above, the court will not require the United States to produce its communications with Olson's counsel.  Further the court, in the exercise of its discretion, declines to impose sanctions against the United States under Rule 16 or its inherent powers.  Consequently, the court **DENIES** Defendants' Motion to Compel and for Sanctions.  (Doc. No. 124).  The Parties shall file proposed redactions to this Order on or before March 31, 2023.  Their filing must state whether the Parties agree as to each redaction and, if the parties do not agree, provide support for each Party's position as to that redaction. The court will then issue a redacted version of this Order, unless the court determines no redactions are appropriate, in which case it will unseal this Order.

**IT IS SO ORDERED.**

Dated this 22th day of March, 2023.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court

15