**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| United States of America, | |
|---|---|
| Plaintiff, | |
| vs. | Case No. 0:22-cr-00048 |
| Steven Dornsbach and Kamida, Inc., | |
| Defendants. | |

## ORDER GRANTING, IN PART, AND DENYING, IN PART, USA'S FIRST MOTION TO EXCLUDE EXPERT TESTIMONY

[¶1]     THIS MATTER comes before the Court on the First Motion to Exclude Expert Testimony filed by the United States on April 17, 2023. Doc. No. 223. Steven Dornsbach ("Dornsbach") and Kamida, Inc. ("Kamida," and collectively with Dornsbach, the "Defendants") filed an Opposition on April 24, 2023. Doc. No. 292. A jury trial is scheduled in this matter starting on May 1, 2023. Doc. No. 221. For the reasons set forth below, the Motion is **GRANTED, in part, and DENIED, in part**.

### BACKGROUND

[¶2]     This case involves an alleged bid rigging scheme related to concrete repair and construction contracts submitted for consideration to municipalities in Minnesota. The one-count Indictment alleges from approximately September 2012 through at least July 2017, Dornsbach, Kamida, "and their co-conspirators" conspired to "suppress and eliminate competition by rigging bids for concrete repair and construction contracts" in various Minnesotan cities, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Doc. No. 1. Dornsbach, acting on behalf of Kamida, would allegedly submit quotes for concrete repair to municipalities and have another company "submit

intentionally losing quotations" for the same proposed work. Id. Thereby, Kamida would allegedly obtain the contract "at collusive and noncompetitive prices." Id. The United States alleges the Defendants engaged in this bid rigging scheme for fourteen projects (one of which resulted in no contract). See Doc. No. 223.

[¶3]     In anticipation of trial, on April 11, 2023, the Defendants disclosed they would be calling an expert witness, Thomas J. Gorowsky. Doc. No. 223-1. Mr. Gorowsky is expected testify that it is his opinion that Kamida's "pricing for jobs alleged by the United States to be 'rigged' is consistent with and within the range of other jobs not alleged to be 'rigged' submitted by the Defendants to the same or similar entities." Id. at p. 5.

## ANALYSIS

[¶4]     The United States argues Mr. Gorowsky's proposed expert testimony fails to meet the requirements of Federal Rules of Evidence 702 and 703 as well as the conditions for expert witnesses set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Specifically, the United States contends Mr. Gorowsky's anticipated testimony and opinions: (1) will be unhelpful to the jury; (2) are "not the product of qualified expert analysis or reliable principles and methods;" (3) rely upon the "disclosure of prejudicial, inadmissible evidence"; and (4) will provide "legal and evidentiary conclusions." Doc. No. 223, p. 6. The Defendants refute the Government's arguments. The Court agrees, in part, with the Defendants and concludes Mr. Gorowsky's proposed expert testimony may be introduced in a limited fashion.

### I.  Legal Standard

[¶5]     The party proponent of expert testimony does not have to demonstrate its expert's assessment is correct, see Kuhn v. Wyeth, Inc., 686 F.3d 618, 625 (8th Cir. 2012), but it must prove the testimony is admissible by a preponderance of the evidence, see Daubert, 509 U.S. at

592 n.10. The district court serves a "gatekeeping function" to ensure "any and all scientific testimony or evidence admitted is not only relevant, but reliable" as well. In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig., 9 F.4th 768, 777 (8th Cir. 2021) (quoting Union Pac. R.R. v. Progress Rail Servs. Corp., 778 F.3d 704, 709 (8th Cir. 2015)).

[¶6]    Federal Rule of Evidence 702 governs the admissibility of testimony by expert witnesses, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) the testimony is based on sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and
>>
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702's four parts have been "boiled down to a three-part test." Johnson v. Mead Johnson & Co., LLC, 754 F.3d 557, 561 (8th Cir. 2014). "First, the testimony must be useful to the finder of fact in deciding the ultimate issue of fact, meaning it must be relevant." In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig., 9 F.4th at 777. "Second, the expert must be qualified to assist the finder of fact." Id. "Third, the testimony must be reliable or trustworthy in an evidentiary sense." Id. An expert's testimony is not admissible "if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757 (8th Cir. 2006).

[¶7]    Federal Rule of Evidence 703 is also relevant to expert testimony. Rule 703 permits the proposed expert's opinion to be grounded on "facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. "If experts in the particular field would

reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Id.

## II.    Relevance of Mr. Gorowsky's Proposed Expert Testimony

[¶8]    The United States contends Mr. Gorowsky's proposed expert testimony will be neither relevant nor helpful to the jury because the reasonableness of the Defendants' prices is neither an element nor a defense to the alleged crime in this *per se* antitrust case. Rather, it says, the creation of the alleged agreement to rig the bids was the alleged criminal act regardless of the effect on prices. The Government also argues the Defendants' terminology of "consistent with," "within the range," or prices not having "increase[d]" are merely synonyms for labeling the Defendants' prices as "reasonable." Doc. No. 223, p. 7. In sum, the United States contends Mr. Gorowsky's proposed expert testimony will mislead the jury into thinking there was no crime as long as the prices were comparatively similar or otherwise reasonable.

[¶9]    The Defendants agree the alleged crime necessitates that the Government prove the existence of an "agreement." However, they contend Mr. Gorowsky's proposed expert testimony is a direct rebuttal to the alleged existence of an "agreement." They claim Mr. Gorowsky may cause the jury to cast doubt on the Government's circumstantial evidence of an alleged anti-competitive agreement because he will testify that the Defendants' prices for the contested projects were *consistent* with the Defendants' prices in non-allegedly rigged projects. Thus, they contend, Mr. Gorowsky's proposed expert testimony may tend to show the Defendants acted independently rather than pursuant to an agreement. They also clarify Mr. Gorowsky will not testify about the reasonableness of the prices, but solely about the prices' consistency across municipal projects, contrary to the Government's assertion. Doc. No. 292, p. 11. The Court agrees with the Defendants, in a limited sense.

4

[¶10]    The Court's <u>Daubert</u> inquiry into the first prong of relevance is flexible. <u>See</u> <u>Block v. Woo</u> <u>Young Med. Co. Ltd.</u>, 937 F. Supp. 2d 1028, 1040 (D. Minn. 2013). The Court's evaluation of relevancy (as well as the third prong of reliability) is intended to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." <u>Marmo</u>, 457 F.3d at 757 (quoting <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 152 (1999)). That said, whether proposed expert evidence or testimony is "relevant" in this criminal case for an alleged *per se* violation of Section 1 of the Sherman Antitrust Act requires knowing the "ultimate issue of fact" that will be presented to the jury. <u>In re Bair Hugger Forced</u> <u>Air Warming Devices Prods. Liab. Litig.</u>, 9 F.4th at 777.

[¶11]    An "agreement to fix prices is unlawful *per se*" under 15 U.S.C. § 1, and such an agreement cannot be shielded from criminal prosecution on the basis "that the prices fixed are themselves reasonable." <u>Catalano, Inc. v. Target Sales, Inc.</u>, 446 U.S. 643, 647 (1980). <u>See</u> <u>Nat'l Soc'y of Pro.</u> <u>Eng'rs v. United States</u>, 435 U.S. 679, 692 (1978) ("[A]n agreement that 'interferes with the setting of price by free market forces' is illegal on its face." (alteration omitted) (quoting <u>United States v.</u> <u>Container Corp.</u>, 393 U.S. 333, 337 (1969)). Nor may the defendant avoid criminal liability by contending the alleged "agreements were designed to eliminate or alleviate" "so-called competitive abuses or evils." <u>United States v. Socony-Vacuum Oil Co.</u>, 310 U.S. 150, 218 (1940). The rationale for excluding these lines of defense is, in part, because "[a]greements for price maintenance of articles moving in interstate commerce are, without more, unreasonable restraints" given that the agreements themselves "eliminate competition." <u>Socony-Vacuum Oil Co.</u>, 310 U.S. at 218 (quoting <u>Ethyl Gasoline Corp. v. United States</u>, 309 U.S. 436, 458 (1940)). For instance, the Supreme Court has held unlawful "an agreement among competing firms of professional

engineers to refuse to discuss prices with potential customers until after negotiations have resulted in the initial selection of an engineer. . . without requiring further inquiry." Catalano, Inc., 446 U.S. at 647 (citing Nat'l Soc'y of Pro. Eng'rs, 435 U.S. at 692-93). Accordingly, the crucial fact to which the proposed evidence must be relevant to in this case is whether there was an alleged anticompetitive agreement. See id.

[¶12]    The Court finds Mr. Gorowsky's proposed expert testimony regarding the Defendants' consistent (as opposed to reasonable) pricing may be relevant for the jury's determination of whether the Defendants entered into a prohibited anticompetitive agreement. There is a crucial difference between "reasonable" and "consistent" pricing in this *per se* antitrust case. Evidence of the Defendants using "reasonable" prices relative to other third parties' prices in a particular market is irrelevant because the Supreme Court has said such evidence cannot excuse an anticompetitive agreement. Id. (concluding criminal liability in a *per se* antitrust case cannot be avoided on the basis "that the prices fixed are themselves reasonable"). Evidence of the Defendants using "consistent" pricing practices relative to their own history of pricing practices (regardless of the prices' reasonableness relative to competitive market prices or practices), however, is distinct. If a defendant's personal history of pricing is like a steady line on a graph and then deviates in a particular instance, then questions may arise regarding what uniquely occurred in that instance. In contrast, if a defendant's pricing history has no such deviations between when competitive projects occurred versus when allegedly non-competitive projects took place, then that steady history may have a tendency to show the defendant was acting on its own and undermine the Government's circumstantial evidence of there being a noncompetitive agreement. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986) ("[C]onduct [that is] consistent with

permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy.").

[¶13]   Finding that such evidence is relevant in this *per se* antitrust case is consistent with case law concerning the "independent action" defense.[1] Courts have permitted the "independent action" defense to move forward when the evidence tended to prove the defendant was acting in its own best interest rather than in cahoots with another party. See, e.g., Nitro Distrib., Inc., 565 F.3d at 424 (determining the defendant-company was acting independently in helping a new breakaway business in order to primarily "protect[] its [own] products business" and limit another party's influence in its dealings); InterVest, Inc. v. Bloomberg, L.P., 340 F.3d 144, 150-51, 165 (3d Cir. 2003) (concluding evidence of the defendant deciding not to do business with the plaintiff due to the plaintiff being a fledgling and risky business showed independent action rather than the existence of a collusive agreement to economically harm the plaintiff); Wallace v. Bank of Bartlett, 55 F.3d 1166, 1169-70 (6th Cir. 1995) (finding bank's advertising of prices to attract certain customers and deter others was permissible competitive action). Evidence of the Defendants holding to a consistent pricing model that has apparently worked for their business in the past may similarly suggest they were acting according to their own best interests in these contested instances.

[¶14]   Accordingly, after having found the proposed expert testimony relevant, the Court leaves it for the jury to decide the weight and credibility of Mr. Gorowsky's proposed expert testimony with some caveats. Mr. Gorowsky's testimony may not include mentions of the Defendants having

---

[1] As the Government recognizes, the "independent action" defense is based in civil law, but it "can also apply in certain criminal cases." Doc. No. 223, p. 15 n.6 (citing Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 423 (8th Cir. 2009)). See Victorian House, Inc. v. Fisher Camuto Corp., 769 F.2d 466, 469 (8th Cir. 1985) ("Independent action is not proscribed by Section 1 of the Sherman Act.").

bid prices that were "less than the competitor's pricing" or them having been "awarded the contract[s]," or similar statements.[2] Doc. No. 223-1, p. 9. Unless the Government opens the door to such evidence, the Defendants' discussion of such facts or analysis is outside the vacuum of the Defendants' own pricing history and such statements strongly imply the Defendants' prices were reasonable because the Defendants were cheaper and ultimately won the contract. See Catalano, Inc., 446 U.S. at 647 (noting the fact "that the prices fixed are themselves reasonable" is not a defense in a *per se* case). Such statements could indeed confuse the jury from their role of determining whether a non-competitive agreement existed.

[¶15]  The United States has also raised the concern that Mr. Gorowsky will make the "inadmissible legal conclusion" that the Defendants' pricing is consistent with "independent action(s)" in case law. Doc. No. 223, p. 15. The Government has also highlighted that Mr. Gorowsky will make other "inadmissible conclusions," such as he is not aware of the Defendants having changed their bids when they were the only bidders or that they submitted bids knowing/assuming they were the only party. Id. at 14. As for the legal conclusions, the Defendants have represented Mr. Gorowsky's "proposed testimony [will be] limited to his opinion" that the Defendants' own price history has been consistent. Doc. No. 292, p. 18.

[¶16]   The Court will take the Defendants at their word that it will not seek for Mr. Gorowsky to make legal conclusions. If the United States raises this objection again during trial, the Court will evaluate the issue accordingly. Turning to Mr. Gorowsky's so-called "inadmissible conclusions," the Court agrees with the United States. Mr. Gorowsky's opinion is limited to his calculations, not

---

[2] The Court's limitation would necessarily prohibit Mr. Gorowsky from discussing the Defendants' "pricing as compared to another competitor" in the projects for Plymouth Parks and Forestry, for example, which the Defendants state they do not intend to offer unless the Government opens the door. Doc. No. 292, pp. 17-18.

his awareness of there being changed bids or his speculations as to the Defendants' knowledge or assumptions.

[¶17]   Given that Mr. Gorowsky's proposed expert testimony is limited to opining that the Defendants employed consistent pricing relative to their own pricing history, the Court finds the testimony is relevant under Rule 702's first prong and will proceed to the Government's remaining arguments. See In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig., 9 F.4th at 777 (discussing the role of relevancy in evaluating proposed expert testimony under Rule 702).

### III.    Mr. Gorowsky's Qualifications & the Reliability of His Testimony

[¶18]   The United States next attacks the qualifications of Mr. Gorowsky because he is "not 'qualified as an expert' on any relevant subject." Doc. No. 223, p. 8. The Government also challenges the reliability of Mr. Gorowsky's data by arguing: (1) it is not apparent how Mr. Gorowsky extrapolated certain prices for particular actions from the total cost of a job; (2) he failed to separate data for more complicated concrete work from apparently lesser complicated jobs (which affects the per square or lineal foot price, and, ultimately, his consistency conclusion); (3) he relied on Dornsbach's "specialized knowledge" rather than his own, which is problematic because the Government cannot cross-examine Dornsbach and that means Mr. Gorowsky is testifying on a subject outside of his alleged expertise. Doc. No. 223, pp. 8-10 n.2.

[¶19]   The Defendants respond by explaining Mr. Gorowsky is not being held out "as an expert in market prices for concrete projects," but he is simply offering "evidence and testimony regarding [the] Defendants' own projects with municipalities." Doc. No. 292, p. 12 n.3. They further contend it is "ironic" that the Government does not "understand how Gorowsky made his calculations . . . even though the basis for [his] work was provided with the disclosure" while the Government simultaneously argues the comparisons were merely laymen's work. Id. at 13 (citing

WWP, Inc. v. Wounded Warriors Fam. Support, Inc., 628 F.3d 1032, 1039-40 (8th Cir. 2011) (discrediting attacks on an expert's calculations because Rule 702 does not require the "proffered expert to make *complicated* mathematical calculations")). Additionally, the Defendants highlight Mr. Gorowsky was given access to all of the Defendants' database that contained the Government's produced documents and they have provided the Bates numbers of the documents used, so his calculations were not based on cherry-picked documents and may be verified. The Court agrees with the Defendants.

[¶20]   Mr. Gorowsky is qualified to testify as to whether his calculations demonstrate the Defendants consistently priced their own projects. See In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig., 9 F.4th at 777 (explaining Rule 702 requires the purported expert to be "qualified to assist the finder of fact"). His curriculum vitae highlights that he is a director at a financial advising firm, a Certified Public Accountant, a Certified Management Accountant, has a master's in business administration, is a member of numerous accountant-related organizations, has an expertise in "economic analysis related to forensic investigations," among other qualifications. Doc. No. 223-1, p. 12. Mr. Gorowsky also represents he has "14 years of experience providing consulting and expert assistance . . . in numerous arbitration and litigation matters" and is a presenter at continuing legal education seminars related to "topics of accounting, financial forensics, and economic damages." Doc. No. 223, p. 21. Given that Mr. Gorowsky is not being asked to opine on the reasonableness of prices or "appropriate range of pricing" in the concrete market (let alone any market in particular) (see Doc. No. 223, p. 10 n.2), the Court finds his accounting qualifications and experience make Mr. Gorowsky an accounting expert qualified to assist the jury in calculating "the range in price per square/lineal foot" in the Defendants' bids on various projects. Doc. No. 223-1, p. 8.

[¶21]   Even if Mr. Gorowsky's analysis is relatively simple, the Eighth Circuit has said Rule 702 does not require "the proffered expert to make *complicated* mathematical calculations." WWP, Inc., 628 F.3d at 1040. In quoting another court, the Eighth Circuit noted:

> [W]hat is a simple mathematical computation to one person may be mind-numbingly complicated to another. [I]f these calculations are as simple as defendants suggest they are . . . , then those jurors who are mathematically knowledgeable will immediately so recognize and wonder why the plaintiffs utilized a CPA to prove the obvious.

Id. at 1040 n.7 (quoting Arnold v. Ambulance Serv. of Bristol, Inc., No. 2:06-CV-105, 2007 WL 5117409, * 1 (E.D. Tenn. Aug. 21, 2007)).

[¶22]   The Court also finds the data used by Mr. Gorowsky in forming his opinion is sufficiently reliable and trustworthy for purposes of Rule 702 and 703. See In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig., 9 F.4th at 777 ("[T]the testimony must be reliable or trustworthy in an evidentiary sense."). Accounting experts would reasonably rely on a party's own bids to examine whether or not it followed a particular pricing pattern. See Fed. R. Evid. 703. The Defendants have made available the documents from which Mr. Gorowsky extrapolated his information. Mr. Gorowsky may be cross-examined regarding from which document he retrieved the data and how he arrived at certain calculations (the latter of which the Government has said could be done by a lay person). Whether Mr. Gorowsky failed to separate data and account for special conditions required in each job that might affect the price "goes to the weight of his testimony rather than admissibility." WWP, Inc., 628 F.3d at 1039. The jury may decide whether or not to credit the calculations and data. See United States v. Vesey, 338 F.3d 913, 917 (8th Cir. 2003) ("The gatekeeper role should not, however, invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence.").

[¶23]   The Court notes the United States' argument that Mr. Gorowsky improperly relied upon the Defendants' "specialized knowledge" in concrete to "explain the variables in pricing" as well as the United States' concern that it will be unable to cross-examine the Defendants regarding such knowledge. Doc. No. 223, pp. 8-10 n.2. Mr. Gorowsky explained he interviewed Defendant Dornsbach and reviewed various information to explain that that "range in price per square/lineal foot is reflective of the specific factors and circumstances for each job." Doc. No. 223-1, p. 8. That being said, Mr. Gorowsky's opinion must be limited to his analysis of the Defendants' pricing—where he got the numerical figures, how he made his calculations, and any numerical trends he sees—not Defendant Dornsbach's explanations of why certain jobs required particular pricing structures. Simply stated, Mr. Gorowsky has not been offered as a concrete or construction expert—he is an accountant. In sum, the Court finds Mr. Gorowsky is qualified and his testimony has sufficient reliability and trustworthiness within these stated parameters.

### IV.    Admissibility of Evidence & Prejudicial Effect

[¶24]   The United States contends the data relied upon by Mr. Gorowsky of the Defendants' bids submitted to municipalities that were not allegedly rigged are prejudicial and inadmissible because they are evidence of lawful conduct under Federal Rules of Evidence 404 and 405. The Defendants respond by arguing the evidence is "material to [their] defense" and helpful to the jury because it pertains solely to concrete projects for municipalities, like the allegedly rigged bids under scrutiny in this criminal case. The Court agrees with the Defendants.

[¶25]   First, the United States' case citations are unhelpful to this matter. The case of United States v. Pablo, 696 F.3d 1280. 1287-88 (10th Cir. 2012), is unavailing because not only is it an out-of-circuit case, but it specifically deals with the Confrontation Clause's protection of a criminal defendant's right to confront testimonial statements. Neither is this a situation where Mr.

Gorowsky will simply be reading evidence into the record without applying his expertise, like a situation discussed in In re Processed Egg Products Antitrust Litigation, 81 F. Supp. 3d 412, 421 (E.D. Pa. 2015). Instead, he has analyzed data made available to the Government and will be offering solely his opinion based on his calculations.

[¶26]   Second, Federal Rule of Evidence 703 does not require the facts the expert relied on to form his opinion to be admissible in order for the opinion to be admitted into evidence. To the extent the facts or data are inadmissible, the "proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. The Court concludes the Defendants' historical bidding data as it relates to municipalities has such probative value in helping the jury understand Mr. Gorowsky's opinion that their potentially prejudicial effects are substantially outweighed. Mr. Gorowsky's opinion, based on his calculations of the Defendants' prior bids submitted to municipalities, is that the pricing of these allegedly rigged instances is "consistent with and within the range" of the Defendants' non-rigged jobs. Doc. No. 223-1, p. 5. This opinion may tend to cast doubt upon the Government's evidence that the Defendants were acting in concert with their alleged co-conspirators in these instances given the prices were allegedly consistent with prices in jobs that are not alleged to be rigged. To any extent the data underlying Mr. Gorowsky's opinion tend to show the Defendants have a character of following the law, as may be inadmissible under Federal Rules of Evidence 404 or 405, the Court finds that has minimal prejudicial effect to the Government. See Fed. R. Evid. 703 (permitting inadmissible facts or data to be disclosed if their probative value outweighs their prejudicial effect "in helping the jury evaluate the opinion"). The Defendants are presumed innocent until proven guilty beyond a reasonable doubt, so any allegedly

inadmissible evidence of lawful conduct under Rules 404 or 405 falls in-line with the hurdle the Government already has to overcome.

[¶27]  Third and finally, the Government's contentions with the underlying purported facts upon which Mr. Gorowsky formed his opinions go to the weight and credibility of Mr. Gorowsky's opinion—not its admissibility. Structural Polymer Grp., Ltd. v. Zoltek Corp., 543 F.3d 987, 997 (8th Cir. 2008). Given the Court will permit Mr. Gorowsky's opinions with the caveats already discussed above, the Government is free to explore his underlying facts and assumptions during cross-examination. Id. at 998. Ultimately, if the jury doubts Mr. Gorowsky's assumptions or data, then the jurors will "discount his ultimate conclusions." Catipovic v. Turley, 68 F. Supp. 3d 983, 1011 (N.D. Iowa 2014) (quoting In re Zurn Pex Plumbing Prods. Liab. Litig., 644 F.3d 604, 615 (8th Cir. 2011)).

### V.    Summary Witness & Rule 1006

[¶28]  Finally, the United States contends Mr. Gorowsky cannot testify as a summary witness regarding summaries created from his report because the evidence has not been shown as independently admissible. The Defendants argue they have provided the summary evidence (scatterplots) and underlying documents to the Government.

[¶29]  Federal Rule of Evidence 1006 allows the use of a "summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." "The party offering a Rule 1006 summary has the burden of showing that the contents of the summary are admissible." United States v. Fechner, 952 F.3d 954, 959 (8th Cir. 2020).

[¶30]  The Court has yet to rule on the admissibility of the documents supporting the Defendants' proposed Rule 1006 summary evidence because the Defendants have not yet shown the documents

are admissible. Id. Accordingly, the Court **DENIES as premature** the Government's request to exclude Mr. Gorowsky as a summary witness.

## CONCLUSION

[¶31]    For the reasons set forth above, the Court **GRANTS, in part, and DENIES, in part**, the Government's Motion. Doc. No. 223. The United States has requested a Daubert hearing in the event the Court denied its Motion. The Court has reviewed the record and concludes a hearing is unnecessary. Accordingly, the United States' request for a hearing is **DENIED**.

[¶32]    In addition, the Parties shall file proposed redactions to this Order on or before **May 5, 2023**. Their filing must state whether the Parties agree as to each redaction and, if the parties do not agree, provide support for each party's position as to that redaction. The Court will then issue a redacted version of this Order, unless the Court determines no redactions are appropriate, in which case it will unseal this Order.

[¶33]    **IT IS SO ORDERED.**

DATED April 28, 2023.

Daniel M. Traynor, District Judge
United States District Court

15