IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | |
| Plaintiff, | |
| vs. | Case No. 22-CR-00048-DMT-CRH |
| Steven Dornsbach and Kamida, Inc., | |
| Defendants. | |

**ORDER DENYING DEFENDANTS' MOTION *IN LIMINE*
REGARDING INTERSTATE COMMERCE**

**INTRODUCTION**

[¶ 1]   THIS MATTER comes before the Court on a Motion *in Limine* Regarding Interstate Commerce filed by the Defendants on April 17, 2023. Doc. No. 229. The United States filed a Response on April 24, 2023. Doc. No. 296. For the reasons set forth below, the Motion is **DENIED**.

**BACKGROUND**

[¶ 2]   The Indictment in this case alleges a single count of Conspiracy to Restrain Trade in violation of 15 U.S.C. § 1, also known as Section 1 of the Sherman Act. As part of the United States' ability to prosecute this crime in Federal Court, the United States will ultimately have to prove at trial the conspiracy was to restrain "trade or commerce **among the several states**." 15 U.S.C. § 1 (emphasis added). This case involves an alleged conspiracy to rig concrete repair and construction bids between the Defendants and various Minnesota municipalities and school districts. Regarding the interstate commerce element, the Indictment alleges the following:

        12.    The business activities of Defendants and their co-conspirator in connection with the concrete repair and construction contracts that are the subject of this Indictment were within the flow of, and substantially affected, interstate commerce. For instance:

    a.   Defendant KAMIDA, INC. purchased supplies containing raw materials cement and fly ash to perform the work required pursuant to the concrete repair and construction contracts that are the subject of this Indictment, which raw materials were produced and shipped from outside the state of Minnesota, in a continuous and uninterrupted flow of interstate trade and commerce.

    b.   The conspiracy was intended to obtain concrete repair and construction contracts at collusive and noncompetitive prices, which would reduce the municipalities' ability to make purchases in interstate trade and commerce.

Doc. 1, p. 5. The Defendants move to exclude evidence to support these contentions under Rules 402 and 403 of the Federal Rules of Evidence.

## DISCUSSION

### I. Legal Standards

[¶ 3] Rule 402 of the Federal Rules of Evidence permits the admissibility of relevant evidence unless the Constitution, a federal statute or rule prohibits relevant evidence's admissibility. Relevant evidence is defined as having "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Despite the general admissibility of relevant evidence, the Court may nevertheless exclude such evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### II. Appropriateness of the Current Motion

[¶ 4] The Defendants argue the United States should be precluded from introducing evidence suggesting the Defendants' general business activities involve interstate commerce. According to

the Defendants, this includes purchasing raw materials and financial information. The Defendants rely on Heille v. City of St. Paul, Minn., 671 F.2d 1134 (8th Cir. 1982), Huelsman v. Civic Ctr Corp., 873 F.2d 1171 (8th Cir. 1989), and Pariser v. Christian Health Care Sys., Inc., 816 F.2d 1248 (8th Cir. 1987), arguing the purported evidence does not support the claim the alleged conspiracy substantially affected interstate commerce as required under Section 1 of the Sherman Act.

[¶ 5]   The United States contends the evidence is admissible both to support its claim the alleged conspiracy was in the flow of interstate commerce and that it had a substantial effect on interstate commerce. The United States specifically contends the business actions during the conspiracy were within the flow of interstate commerce and the evidence Defendants seek to exclude is relevant to proving that element. As to the admissibility of the evidence to prove the alleged conspiracy had a substantial effect on interstate commerce, the United States argues the evidence shows the conspiracy "had a 'no insubstantial effect' on interstate commerce through, for example, the purchase of materials for the rigged projects in interstate commerce—among other evidence." Doc. No. 296 at p. 8 (citing United States v. Vega-Martinez, 949 F.3d 43, 50 (1st Cir. 2020)). In short, the United States argues it should be free to present evidence under both the in the flow of interstate commerce and substantially affecting interstate commerce standards and it is up to the jury to decide whether the evidence proves that element. The Court agrees with the United States.

[¶ 6]   The Court does not need to decide whether the proposed evidence meets the standards correctly set forth by the Defendant at this stage of the case. The cases relied upon by the Defendants were in a substantially difference procedural posture than this case. The Court begins with McLain v. Real Estate Board of New Orleans, Inc., in which the United States Supreme Court sets up a framework for dealing with jurisdictional challenges to a civil complaint:

> To establish jurisdiction a plaintiff must allege the critical relationship in the pleadings and if these allegations are controverted must proceed to demonstrate by submission of evidence beyond the pleadings either that the defendants' activity is itself in interstate commerce, or, if it is local in nature, that it has an effect on some or other appreciable activity demonstrably in interstate commerce.

444 U.S. 232, 242 (1980). In this framework, the jurisdictional element "must be determined using a case-by-case analysis of the relevant economic facts." Heille v. City of St. Paul, Minn., 671 F.2d at 1136. There are two modes in which the jurisdictional element can be proven at trial: (1) if the conspiracy "occurs in the flow of interstate commerce: or (2) "though wholly local in nature, substantially affects interstate commerce." Hayden v. Bracy, 744 F.2d 1338, 1342 (8th Cir. 1984). "In situations where the source or application of the business restraint is entirely local, jurisdiction will lie if the necessary effect is to stifle or restrain commerce among the states." Huelsman v. Civic Center Corp., 873 F.2d 1171, 1174 (8th Cir. 1989). At trial, the United States will have to "demonstrate that the defendant's alleged unlawful conduct, and not the defendant's general activities, substantially affects interstate commerce." Huelsman 873 F.2d at 1175.

[¶ 7] In Heille, the Eight Circuit noted the defendant was a municipal corporation in the business of "rubbish collection" that "was carried on entirely within Minnesota." 671 F.2d at 1136. The other factors considered by the District Court in dismissing the complaint on the jurisdictional element were (1) the trucks used in rubbish collection were purchased out of state; (2) the rubbish itself originated out of state; (3) some customers may have lived in Wisconsin; and (4) some of the rubbish was hauled to Wisconsin, "although there was no proof that plaintiff or defendant engaged in such transactions." Id. at 1136-37. In addition, there was no evidence that any "service or product was purchased or sold in interstate commerce by either party." Id. at 1137. The Eighth Circuit concluded the District Court did not err in dismissing the complaint because "plaintiff failed to demonstrate the required nexus with interstate commerce." Id.

[¶ 8]   In <u>Huelsman</u>, plaintiffs were self-employed licensed street vendors selling goods and merchandise during baseball games and other events at Busch Stadium in St. Louis, Missouri. 873 F.2d at 1173. Four days before baseball's opening day, the City of St. Louis enacted an ordinance that prohibited street vending within a specified geographic area except when a party had a vending agreement with Civic Center, which owned Busch Stadium. <u>Id.</u> Sportservice had a contract with Busch Stadium to sell souvenirs. <u>Id.</u> Plaintiffs did not. <u>Id.</u> At the district court, the plaintiffs alleged (1) they purchased good from out-of-state distributors and (2) they "sold goods to out-of-state visitors." <u>Id.</u> at 1175. On appeal, they submitted an affidavit containing "estimate of the volume of merchandise purchased and sold, the state residence of those purchasing the merchandise and the manufacturing location of the merchandise." <u>Id.</u> The Eighth Circuit did not consider the affidavit because it was not presented to the district court for review. <u>Id.</u> The remaining allegations were rejected by the Eighth Circuit because the Plaintiffs failed to meet their burden. The Eighth Circuit summarized the process as follows:

> As required under <u>McLain</u> and <u>Heille</u>, [the plaintiffs] alleged in the amended complaint that Civic Center and Sportservice's alleged anti-competitive and monopolistic activities resulted in the closing of their vending operations, which included sales to out-of-state visitors and purchases from out-of-state distributors. Civic Center and Sportservice in turn contended that these allegations were insufficient to show any substantial effect on interstate ecommerce and that they amounted to mere conclusions. The burden then shifted back to [the plaintiffs] to submit evidence beyond the pleadings to support the nexus with interstate commerce element. [Plaintiffs] failed to submit any additional evidence.

<u>Id.</u> at 1176. Because plaintiffs did not submit any evidence to support their contentions in the Complaint, the Eighth Circuit held plaintiffs failed to meet their burden.

[¶ 9]   In <u>Pariser</u>, the plaintiff was a licensed physician who, after an investigation, was suspended from practice at Southern Medical Center ("SMC") in Illinois. 816 F.2d at 1250. The plaintiff brought a challenge to this termination under Section 1 of the Sherman Act. <u>Id.</u> at 1249. The district

- 5 -

court dismissed plaintiffs claim under Section 1, concluding the plaintiff failed to establish the jurisdictional element of a Sherman Act claim because (1) SMC did not provide services outside of Illinois; (2) 98 percent of SMC's patients are from Illinois; and (3) other hospitals serve patients in Missouri and Kentucky. Id. at 1253. Based upon these findings, the Eighth Circuit agreed "the hospital's action had no substantial effect on interstate commerce." Id.

[¶ 10]   The cases discussed above each dealt with a challenge to the pleading in each respective case. The standard laid out in McLain is a burden-shifting pleading standard. See Huelsman, 873 F.2d at 1176. If the complaint, or in this case Indictment, was challenged for insufficiently alleging the interstate commerce element, then the United States would have been required to offer proof of evidence beyond the pleadings to establish this interstate commerce nexus. See McLain, 444 U.S. at 242 (setting forth a burden shifting analysis for challenges to the jurisdictional element under Section 1 of the Sherman Act). However, there has been no challenge to the interstate commerce element until this Motion *in Limine*, which does not challenge the element, but the admissibility of the evidence to support the element.

[¶ 11]   Whether the United States' evidence at trial meets the criteria set forth above is a question for the jury. This is not grounds for the Court to prohibit the United States from entering evidence relating to the interstate commerce associated with the alleged conspiracy. As noted by the Eighth Circuit, this element "must be determined through a case-by-case analysis of the relevant economic facts." Huelsman, 873 F.2d at 1175. The cases relied upon by the Defendants each expressly contemplate the admission of evidence (albeit at the pleading stage) to bolster the allegations in the complaints. This case is presently preparing for trial on the merits. The arguments put forth by the Defendants go to the weight and sufficiency of the evidence, not the admissibility.

[¶ 12] As for the standards under the Rules of Evidence, it appears at this stage the evidence proposed for exclusion by the Defendants may be relevant to both the flow of interstate commerce and substantially affecting interstate commerce standards because the purported evidence has a tendency to prove the allegations contained in the Indictment relating to interstate commerce. The Indictment alleges the conspiracy was in the flow of interstate commerce and substantially affected interstate commerce. Where the Defendants received their supplies, or where and how the financial transactions occurred, or any other evidence connecting the conspiracy to interstate commerce all have a tendency to prove this element. These are not simply the "general business practices" of the Defendants. Rather, this would be evidence the Defendants conduct related to this conspiracy was in the flow of interstate commerce or potentially substantially affected interstate commerce. Testing the legal sufficiency of the allegation itself is improper.

[¶ 13] The Defendants could have challenged the sufficiency of the interstate commerce allegation in a motion to dismiss. However, they chose not to make such a claim. With trial days away, the proper course is to not exclude the evidence but to allow the United States the opportunity to present their case to the jury. Whether the facts as they come in at trial are sufficient to prove the interstate commerce element is a question to be considered by the jury after being instructed on the law.

## CONCLUSION

[¶ 14] The Defendants' arguments relating to the alleged evidence of interstate commerce nexus are not appropriate in the context of determining the evidence's admissibility. Rather, they are arguments more accurately directed towards the weight and sufficiency of the evidence as it relates to the interstate commerce element. Accordingly, and for the reasons set forth in detail above, the Defendants' Motion to Exclude Evidence Regarding Interstate Commerce is **DENIED**.

[¶ 15]  In addition, the Parties shall file proposed redactions to this Order on or before **May 5, 2023**. Their filing must state whether the Parties agree as to each redaction and, if the parties do not agree, provide support for each party's position as to that redaction. The Court will then issue a redacted version of this Order, unless the Court determines no redactions are appropriate, in which case it will unseal this Order.

[¶ 16]  **IT IS SO ORDERED**.

DATED April 28, 2023.

Daniel M. Traynor, District Judge
United States District Court