IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>             Plaintiff,<br><br>vs.<br><br>Steven Dornsbach and Kamida, Inc.,<br><br>             Defendants. | Case No. 0:22-cr-00048 |

ORDER DENYING MOTION TO QUASH SUBPOENA AS TO FOSTER
AND
GRANTING MOTION TO QUASH SUBPOENA AS TO HOPPE

[¶1]   THIS MATTER comes before the Court on two Motions to Quash Subpoenas filed by Magistrate Judge Dulce J. Foster ("Foster")[1] and Lousene Hoppe ("Hoppe") on April 21, 2023. Doc. Nos. 274, 277. Steven Dornsbach and Kamida, Inc. ("Defendants") filed a Response on April 25, 2023. Doc. No. 298. Trial is scheduled in this matter for May 1, 2023. For the reasons set forth below, the Motion to Quash (Doc. No. 277) as to Foster is **DENIED** and the Motion to Quash (Doc No. 274) as to Hoppe is **GRANTED**.

## BACKGROUND

[¶2]   The United States' investigation and prosecution of Ronnie Taggart ("Taggart"), an employee of the City of Plymouth, Minnesota, eventually led them to the Defendants in the instant case: Kamida, Inc. ("Kamida") and its Chief Executive Officer, Steven Dornsbach ("Dornsbach").

---

[1] Magistrate Judge Foster took the bench after representing Olson. The subpoena served to Foster does not arise out of the performance of her official duties as a Magistrate Judge but rather the testimony the Defendants seek is related to Foster's work in private practice. For ease of this Order and to prevent confusion, the Court will refer to Judge Foster as "Foster" throughout.

1

[¶3]   Taggart was allegedly involved in a bid rigging scheme. He allegedly provided municipal contracts to contractors in exchange for bribes and kickbacks, contrary to Minnesota law and municipal policies that governed the bidding process. He was eventually charged by way of Information with wire fraud in violation 18 U.S.C. §§ 1343 and 1346. See United States v. Taggart, Case No. 18-cr-93 (D. Minn. 2018), Doc. No, 1. He entered a guilty plea to this charge in May 2018. See id. at Doc. No. 10.

[¶4]   The United States traced an email sent by Taggart as a part of the aforementioned scheme to Dornsbach. Doc. No. 65, p. 5. In this email, Taggart requested a "Comp bid from your guy for [his] records in case [he] gets audited." The "guy" referenced by Taggart turned out to be Clarence Olson ("Olson"). See Taggart, Case No. 18-cr-93 (D. Minn. 2018), Doc. No. 10, pp. 4-5.

[¶5]   On August 11, 2021, Olson was charged with the one count of conspiracy to restrain trade in violation of the Sherman Act, 15 U.S.C. § 1. See United States v. Olson, Case No. 21-cr-00172-ECT (D. Minn. 2021), Doc. No. 1, ¶ 2. On September 27, 2021, he appeared before Judge Eric. C. Tostrud, waived Indictment, pled guilty to the offense charged in the Information. See id. at Doc. Nos. 11, 13.

[¶6]   Olson wrote the following letter ("First Letter') to Judge Tostrud on October 12, 2021, in anticipation of sentencing (which has yet to occur):





Doc. No. 49-3. The United States disclosed the First Letter and summaries of its communications with Olson's counsel.[2] Those summaries related to Counsel's belief that "Olson's memory is poor and his recollection of certain topics is incomplete, not the most reliable, and/or that Olson may have difficulty remembering specifics" and that "Olson was part of a special education program growing up." Doc. No. 49-3.

[¶7]   On June 10, 2022, Olson submitted another letter ("Second Letter") to Judge Tostrud. Doc. No. 127-1. The Second Letter reads:



Id.

---

[2] Defendants have previously sought production of all communications between the United States and Olson's Counsel. Doc. No. 44. Magistrate Judge Wright denied the motion and this Court affirmed the Order, reasoning that the "summaries produced by the Untied States of its communications with Olson's counsel provided Defendant with ample information for any direct or cross examination of Olson and his counsel." Doc. No. 156. While the Motion for Discovery was pending, Defendants served Foster's former law firm, with a subpoena, requiring the production of "all documents related to the representation provided by your law firm . . . to Clarence Olson, Maribeth Olson, and C. Olson Concrete" since January 2019. Doc. No. 94. Magistrate Judge Hochhalter granted the law firm's Motion to Quash reasoning the subpoena lacked specificity and was oppressive. Doc. No. 196. This Court affirmed the Order. Doc. No. 211.

[¶8]    Before filing of the Information and thereafter, Olson was represented by Dulce Foster, now a United States Magistrate Judge, prior to her taking the bench. Olson, Case No. 21-cr-00172-ECT (D. Minn. 2021). On May 31, 2022, Foster withdrew as counsel for Olson and Hoppe was substituted as Olson's counsel of record. Olson, Case No. 21-cr-00172-ECT (D. Minn. 2021), Doc. No. 28.

[¶9]    On March 24, 2023, Defendants served Hoppe with a subpoena to testify at trial. Doc. No. 274-1. On March 31, 2023, Defendants served Foster with a subpoena to testify at trial. Doc. No. 277-1. Counsel for Defendants, Jennifer Robbins ("Robbins"), submitted an affidavit in support of the subpoena. Id. at 277-2. In the affidavit, Robbins states the Defendants anticipate calling Foster to testify for purpose of impeaching either Olson or his counsel "based on the information provided to the government (summarized above) and the information in his plea agreement or otherwise related to his plea of guilty, including to show that Olson had ulterior motives to plead guilty and his claim that he was not coerced to enter his guilty plea." Id. at p. 5. Robbins also asserts that Olson's "memory, and lack thereof, as observed by [Foster] during her representation of Olson, is relevant to Defendants Dornsbach and Kamida's defenses." Id. at p. 4.

[¶10]   On April 21, 2023, Foster and Hoppe filed Motions to Quash the Subpoenas. Doc. Nos. 274, 277. The Defendants filed a Response on April 25, 2023. Doc. No. 298.

## DISCUSSION

### I. Legal Standard

[¶11]   Generally, Rule 17(a) subpoenas may be issued where a defendant seeks testimony that is relevant and material to the issue being litigated. Stern v. U.S. Dist. Ct. for Dist. of Mass., 214 F.3d 4, 17 (1st Cir. 2000). The Supreme Court in United States v. Nixon established the standard governing a Rule 17(c) subpoena that has been distilled to three fundamental elements: 1)

4

relevancy; 2) admissibility; and 3) specificity. 418 U.S. 683, 699-700 (1974). Moreover, Rule 17 may not be used to conduct a "fishing expedition." Id. The same standard applies to subpoenas compelling the attendance of witnesses, i.e., subpoenas ad testificandum. Stern, 214 F.3d at 17. When faced with a motion to quash, the defendant has the burden to show that the witness whose presence he seeks is necessary for an adequate defense, and the trial court has wide discretion in determining whether the defendant has met that burden. United States v. LeBeau, 867 F.3d 960, 975 (8th Cir. 2017).

[¶12] The district court "may quash or modify" a subpoena if "compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Where the sought testimony is cumulative or immaterial, a court does not abuse its discretion by quashing a Rule 17(a) subpoena. See United States v. Beasley, 479 F.2d 1124, 1128 (5th Cir. 1973). Generally, courts may find a subpoena is unreasonable or oppressive if it is irrelevant, abusive or harassing, overly vague, or excessively broad. See In re Grand Jury Subpoena (THCF Med. Clinic Records), 504 F.Supp.2d 1085, 1088 (E.D. Wash. 2007). Courts should also quash or modify Rule 17(c) subpoenas if they seek privileged materials. United States v. Reyes, 239 F.R.D. 591, 598 (N.D. Cal. 2006) (citing United States v. Tomison, 969 F. Supp. 587, 597 (E.D. Cal 1997)). The Rule 17(c)(2) inquiry is a "discretionary, case-by-case inquiry," that "cannot sensibly be converted into a mechanical rule," or set of factors. United States v. Bergeson, 425 F.3d 1221, 1225-26 (9th Cir. 2005). This inquiry is the same whether the individual challenging the subpoena is a party or non-party. See Fed. R. Civ. P. 17(c)(2) advisory committee's note to 2008 amendment.

### II. Foster Subpoena

[¶13] Foster argues the subpoena should be quashed because the testimony is irrelevant and cumulative and will necessarily encompass privileged communications and attorney work product.

5

Defendants argue they are not seeking testimony regarding Foster's client communications with Olson, rather they argue the testimony is relevant to the statements she made regarding Olson's memory and recollection of facts and seek to limit the testimony to the summary disclosed and the two letters that Olson submitted to Judge Tostrud.

[¶14]   A Rule 17(c) subpoena "should be quashed or modified if it calls for privileged matter." 2 Federal Practice & Procedure § 275, at 258; see also Tomison, 969 F. Supp. at 597.  In this case, two privileges are pertinent, the attorney-client privilege and the attorney work-product privilege. "The attorney-client privilege protects confidential communications between a client and his attorney made for the purpose of facilitating the rendering of legal services to the client." United States v. Spencer, 700 F.3d 317, 320 (8th Cir. 2012). The privilege exists for the benefit of the client, not the attorney, "[b]ut the attorney has the duty, upon any attempt to require him to testify or produce documents within the confidence, to make assertion of the privilege, not merely for the benefit of the client, but also as a matter of professional responsibility in preventing the policy of the law from being violated." Schwimmer v. United States, 232 F.2d 855, 863 (8th Cir. 1956). As explained by the Supreme Court, the work-product privilege safeguards "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." Hickman v. Taylor, 329 U.S. 495, 510 (1947).

[¶15]   The Defendants seek testimony related to the Counsel's statements in the summary disclosure and the two letters that Olson submitted to Judge Tostrud. Defendants fail to identify any specific testimony that Foster could provide surrounding the two letters. Foster withdrew her representation prior to Olson sending the Second Letter and any conversations between Foster and Olson about the First Letter are protected by attorney client privilege and are not admissible.

[¶16]  Further, in the affidavit, Robbins states the Defendants anticipate calling Foster to testify for purpose of impeaching either Olson or his counsel "based on the information provided to the government (summarized above) and the information in his plea agreement or otherwise related to his plea of guilty, including to show that Olson had ulterior motives to plead guilty and his claim that he was not coerced to enter his guilty plea." Again, any conversations between Foster and Olson regarding his plea agreement, reasons to plead guilty, and motives to plead guilty are protected by attorney-client privilege and are not admissible. Defendants' assertion that Foster be required to testify about information "otherwise related to his plea of guilty" is not specific, nor reasonable.

[¶17]  Defendants also seek testimony about the summaries prepared by the United States related to Foster's belief that "Olson's memory is poor and his recollection of certain topics is incomplete, not the most reliable, and/or that Olson may have difficulty remembering specifics" and that "Olson was part of a special education program growing up." Doc. No. 49-3. The summary produced is related to communications between Foster and the United States – not between Foster and Olson. Further, Counsel shared these observations with the United States and thus surrendered any privileges that may have attached to them. United States v. Workman, 138 F.3d 1261, 1263 (8th Cir. 1998) ("Voluntary disclosure of attorney client communications expressly waives the privilege.") (citations omitted).

[¶18]  Accordingly, Foster's Motion to Quash Subpoena (Doc. No. 277) is **DENIED**. At this time, the Court will limit any testimony provided by Foster to the communications she had with the United States as memorialized in the summary disclosed by the United States.

### III. Hoppe Subpoena

[¶19]   Hoppe argues the subpoena should be quashed because the Defendants have failed to meet their burden that Hoppe has relevant and material testimony. Hoppe contends that requiring her to testify while she is currently counsel of record for Olson is unreasonable and oppressive and would pose a significant risk to the attorney-client relationship. The Defendants argue Hoppe's testimony is relevant for the same reasons as Foster because she represented Olson around the time of the Second Letter and "the facts and circumstances regarding the government's involvement with respect to that second letter are relevant to show Olson's failing memory, his lack of intent to rig bids, and the government's 'coaching' of his testimony."

[¶20]   Rule 17(c)(2) confers discretion on the district court to quash a subpoena if compliance would be "unreasonable or oppressive." Fed. R. Crim. P. 17. "[T]he district court may properly consider, among other factors, whether compliance would likely destroy the attorney-client relationship, and whether the information sought from the lawyer is already available from other sources." Id.

[¶21]   The Defendants have failed to meet their burden that Hoppe's testimony is relevant and material. The summary of counsel's statements disclosed by the United States was produced to the Defendants on April 14, 2022. Doc. No. 49-3. This was prior to the substitution of Hoppe as Olson's counsel on May 31, 2022. Doc. No. 299-1. While Hoppe may have been Olson's Counsel during the time he sent the second letter, Hoppe's declaration specifically states she does not have "independent knowledge about the advice and/or context surrounding Mr. Olson's submissions of two letters to the Honorable Eric C. Tostrud other than information received via attorney-client privileged communications." Doc. No. 275. Therefore, Defendants have not shown that the testimony sought is both relevant and material because Hoppe was substituted as counsel after the

summary was produced and she has no independent knowledge or facts about the Second Letter. Defendants are relying on a FBI 302 form to draw an inference that Olson's Counsel was involved nefarious activity with the Second Letter, which the Court previously found was "not particularly reasonable." Doc. No. 207.  See Stern, 214 F.3d at 17 ("[A] subpoena ad testificandum survives scrutiny if the party serving it can show that the testimony sought is both relevant and material." (citing United States v. Valenzuela–Bernal, 458 U.S. 858, 867 (1982))). Defendants are merely speculating that Hoppe's testimony will confirm their previously drawn inference. The Court will not require Hoppe to testify just so the Defendants can go on a fishing expedition. United States v. Bradford, 806 F.3d 1151, 1155 (8th Cir. 2015) ("[A] subpoena should not issue based upon a party's mere hope that it will turn up favorable evidence." (internal quotation marks omitted))

[¶22]  Further, requiring Hoppe to testify against Olson while she still represents him would be unreasonable and oppressive, especially in light of Defendant's failure to seek testimony that is relevant and material. See Bergeson, 425 F.3d at 1226-27 (upholding a district court's decision to quash a subpoena of the defendant's current attorney to testify before a grand jury).

[¶23]  Accordingly, Hoppe's Motion to Quash Subpoena (Doc. No. 274) is **GRANTED** and the subpoena served by Defendants on Hoppe is **QUASHED**.

## CONCLUSION

[¶ 1]  For the reasons set forth above, the Motion to Quash (Doc. No. 277) as to Foster is **DENIED** and the Motion to Quash (Doc No. 274) as to Hoppe is **GRANTED**.

[¶24]  In addition, the Parties shall file proposed redactions to this Order on or before **May 5, 2023**. Their filing must state whether the Parties agree as to each redaction and, if the parties do not agree, provide support for each party's position as to that redaction. The Court will then issue

a redacted version of this Order, unless the Court determines no redactions are appropriate, in which case it will unseal this Order.

[¶25]   **IT IS SO ORDERED.**

DATED April 28, 2023.

Daniel M. Traynor, District Judge
United States District Court