UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-cr-48-DMT-CRH

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STEVEN DORNSBACH and )<br>KAMIDA, INC., )<br>)<br>Defendants. ) | **OPPOSITION TO MOTION FOR A PERMANENT INJUNCTION** |

The United States, by and through its attorney, Eun-Ha Kim of the Department of Justice, Antitrust Division, respectfully submits its response to Defendants' Motion for a Permanent Injunction (Dkt. 367, 369).

Plaintiffs Steven Dornsbach and Kamida, Inc. ("Mr. Dornsbach") are not entitled to an injunction mandating that the Department of Justice remove from its website the press release regarding their prosecution. First, Mr. Dornsbach has not shown actual success on the merits of a legally cognizable cause of action. His submission does not articulate a legal entitlement to removal of a press release from a government website. Second, even if he were able to demonstrate a legal entitlement, his claim still fails because he has not carried his burden of showing that an injunction is in the

1

public interest. As set forth fully below, this is because there are public benefits to the publication of press releases that announce criminal charges.

## BACKGROUND

On March 9, 2022, a federal grand jury in Minnesota returned an indictment against Steven Dornsbach and Kamida, Inc. for entering into and engaging in a conspiracy to restrain trade in violation of Section 1 of the Sherman Act (Dkt. 1). On March 10, 2022, the Department of Justice, Office of Public Affairs, issued a press release titled "Minnesota Concrete Company and its CEO Indicted for Rigging Bids for Public Contracts." Ex. 1, *available at* https://www.justice.gov/opa/pr/minnesota-concrete-company-and-its-ceo-indicted-rigging-bids-public-contracts. In describing the conduct alleged, the press release disclosed the fact of the indictment, a description of the charge and other information that was contained within the publicly filed indictment.[1] Ex. 1; Dkt. 1. Consistent with the Department's practice, the press release also contained a statement from the Assistant Attorney General for the Antitrust Division concerning the public policy significance of the indictment in furtherance of the Department's law enforcement goals; a

---

[1] Such disclosures are permitted under the Justice Manual, 1-7.500, *available at* https://www.justice.gov/jm/jm-1-7000-media-relations#1-7.500 (permitting release of charged defendant's name, substance of charge, and Assistant Attorney General discussion of public policy significance of charge when doing so would further law enforcement goals).

statement from an Assistant Director from the FBI's Criminal Investigative Division describing the allegations in the indictment and commenting on the public policy importance of investigating antitrust crimes; and a hyperlink to the indictment.

After a seven-day jury trial, on May 10, 2023, the jury returned a verdict of not guilty as to both Dornsbach and Kamida, Inc. (Dkt. 343). On May 12, 2023, a Friday, the Court entered its judgment of acquittals (Dkts. 351, 352). On May 15, a Monday, based on its normal practice, the Division requested that the Department's Office of Public Affairs (OPA) annotate the press release and the hyperlinked indictment to reflect Mr. Dornsbach's acquittal. On May 16, OPA added a notation to the press release: "Note: The defendants in this case, Steven Dornsbach and Kamida Inc., were acquitted by a jury of the charges alleged in the indictment described in the press release below" Ex. 1. Similar notations have been applied to other exonerated defendant press releases.[2]

Counsel filed the instant motion on July 10, 2023 (Dkts. 367, 369).

---

[2] *See, e.g.*, Press Release, U.S. DEP'T OF JUSTICE, https://www.justice.gov/opa/pr/senior-executives-major-chicken-producers-indicted-antitrust-charges; Press Release, U.S. DEP'T OF JUSTICE, https://www.justice.gov/opa/pr/davita-inc-and-former-ceo-indicted-ongoing-investigation-labor-market-collusion-health-care; Press Release, U.S. DEP'T OF JUSTICE, https://www.justice.gov/opa/pr/four-individuals-indicted-wage-fixing-and-labor-market-allocation-charges

# ARGUMENT

Mr. Dornsbach and Kamida, Inc., have moved the court for a permanent injunction pursuant to Fed. R. Crim. P. 47 and Fed. R. Civ. P. 65. "To obtain a permanent injunction, [the movant] [is] required to show: 1) its actual success on the merits; 2) that it faces irreparable harm; 3) that the harm to it outweighs any possible harm to others; and 4) that an injunction serves the public interest." *Community of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 643 F.3d 1005, 1012 (8th Cir. 2011).

**I.  Mr. Dornsbach is not entitled to a permanent injunction because he has not shown actual success on the merits of a legally cognizable cause of action.**

Mr. Dornsbach's claim does not proceed past the first requirement for injunctive relief because his submission does not identify a legal right to removal of the press release from the DOJ's website. It is axiomatic that a movant cannot succeed on the merits without asserting a cognizable claim. *See New England Patriots Fans v. National Football League*, 16-10659-FDS, 2016 WL 9224074 (D. Mass. April 8, 2016) (plaintiffs did not demonstrate a reasonable likelihood of success on the merits because their complaint did not allege "that they were parties to any relevant contract, express or implied; that the defendants owned them any relevant duty of care; or that there is

4

any legally cognizable injury for which the law will provide relief"). At bottom, Mr. Dornsbach faults the DOJ for maintaining on its website a press release that is accurate on its face. The release, as amended, asserts that Mr. Dornsbach and Kamida were indicted in the District of Minnesota for Sherman Act violations and subsequently acquitted. The document identifies the statutory maximum and identifies the government agencies involved in the case. A quote from an FBI official characterizing the charges is qualified with "allegedly." Mr. Dornsbach does not establish that the government's maintenance of this document on its website violates a regulation, statute, or constitutional provision. Nor does he identify any cause of action that would entitle him to any sort of relief on these facts. Because Mr. Dornsbach has not demonstrated success on any actual claim, the Court should deny his prayer for injunctive relief.

**II.    In the alternative, even if Mr. Dornsbach were able to demonstrate actual success on a legally cognizable cause of action, he is not entitled to relief because a permanent injunction is not in the public interest.**

Mr. Dornsbach's claim fails for the additional reason that an injunction requiring a federal agency to end public access to a press release is not in the public interest.

### A. The publication of historical press releases benefits the public by providing information about the Department's operations.

Press releases announcing charges provide insight into how prosecutors are using public resources. Members of the public can glean information from historical press releases, including which statutes prosecutors are employing, the facts that underlie charges, and the enforcement priorities of prosecuting offices. *Cf. Nixon v. Warner Communications,* Inc., 435 U.S. 589, 597-98 (1978) ("the citizen's desire to keep a watchful eye on the workings of public agencies" may justify an order permitting inspection of judicial records). This is true whether prosecutions result in convictions or acquittals. Press releases that note acquittals – such as the one at issue here – efficiently communicate the outcome of the trial to interested citizens. Significantly, as noted above, Mr. Dornsbach's submission does not identify anything in the press release that is factually inaccurate.

In addition, removing a press release announcing charges that ultimately resulted in acquittal may undermine the public's confidence in the Department of Justice by creating a perception that the Department hides adverse results. A citizen who discovers that materials about Mr. Dornsbach's case were removed from the Department's website could draw negative

conclusions about the Justice Department or even the justice system. The public interest is served by preserving public faith in that system.[3]

### B. The benefits of public access to press releases outweigh any harm sustained by Mr. Dornsbach and Kamida, Inc.

These public interests outweigh any reputational harms sustained by Mr. Dornsbach due to the press release's continued presence on the Department website for two reasons.

<u>First</u>, Mr. Dornsbach's indictment and acquittal will always be in the public sphere, regardless of whether the press release announcing his indictment is removed from the Department's website. The indictment will remain on PACER. So too will part of the Assistant Attorney General's statement, which was reproduced in at least one news publication, along with a quotation from Mr. Dornsbach's lawyer referencing the online press release. Ex. 2. While the government recognizes the reputational impact that of continued publication of the press release may have for Mr. Dornsbach and

---

[3] Regardless of whether the press release remains on the Department's public website, the Department has a legal obligation to maintain the document in accordance with federal records schedules. *See* 44 U.S.C. § 2901 *et seq.*, 44 U.S.C. § 3101 *et seq.*, and 44 U.S.C. 3301 *et seq.* As a federal record, the press release may be subject to the Freedom of Information Act (FOIA). 5 U.S.C. § 552. A future FOIA request revealing that the DOJ has removed press releases from its website could undermine trust in the Department.

his company, the fact remains that his indictment, trial, and acquittal have been reported by private media outlets and those stories will remain publicly available. The relief that Mr. Dornsbach requests accordingly cannot remedy the reputational harms he alleges. *Cf. Perez-Guerrero v. U.S. Atty. Gen*, 717 F.3d 1224, 1235-36 (11th Cir. 2013) (declining to redact petitioner's identity on court documents because "his name, photograph, and identity as an informant have been widely reported in the media").

Second, as noted above, the contents of the press release are accurate, thus mitigating any harm to Mr. Dornsbach. The press release states that a federal grand jury returned an indictment, provides a description of the charge, contains commentary from Department officials regarding the importance of investigating bid-rigging violations and enforcing competition laws, and recites other information that was contained within the publicly filed indictment. The press release includes the caveat "[a]ccording to court documents filed in the U.S. District Court in Minneapolis," prior to describing the alleged conduct, and also contains the word "allegedly," before "cheated." Ex. 1. The press release was updated to include the fact of the acquittals, and the hyperlinked indictment now includes a preface noting the fact of the acquittals. Ex. 1. For these reasons, the public interest in receiving accurate

information about the Division's enforcement activities outweighs any harm to Mr. Dornsbach.

## CONCLUSION

The Government respectfully requests that the Court deny Defendants' Motion for a Permanent Injunction for the reasons stated above.

Dated: August 3, 2023

/s/

Eun-Ha Kim
Senior Litigation Counsel

U.S. Department of Justice
Antitrust Division
209 South LaSalle Street,
Suite 600
Chicago, IL 60604
Tel: (312) 984-7200