IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Steven Dornsbach and Kamida, Inc.,<br><br>Defendants. | Case No. 22-CR-00048-DMT-CRH |

**ORDER DENYING MOTION FOR ORDER FOR PERMANENT INJUNCTION**

**INTRODUCTION**

[¶ 1] THIS MATTER comes before the Court on the Defendants' Motion for Order for Permanent Injunction filed on July 10, 2023. Doc. No. 367. The United States filed a Response on August 3, 2023. Doc. No. 375. The Defendants filed a Reply on August 10, 2023. Because the Court concludes the Defendants have failed to meet their burden of establishing ancillary jurisdiction with this Court, the Motion is **DENIED**.

**BACKGROUND**

[¶ 2] The relevant facts are not in dispute. On March 9, 2022, the United States indicted the Defendants, charging them with one count of Conspiracy to Restrain Trade for alleged violations of Section 1 of the Sherman Act (15 U.S.C. § 1). The very next day, the Department of Justice's Office of Public Affairs published a press release ("Press Release") with the title "Second Charge Filed for Long-Running Conspiracy that Targeted Local Governments and Public Schools in Minnesota." Doc. No. 375-1. A jury trial was held from May 1 to May 10, 2023. Doc. Nos. 323, 324, 326, 328, 335, 338, 334. On May 10, 2023, the jury returned a verdict of not guilty on the

charge as to both Defendants. Doc. No. 343. On May 16, 2023, the Office of Public Affairs added a note to the Press Release at the top of the article that states, "***Note: The defendants in this case, Steven Dornsbach and Kamida Inc., were acquitted by a jury of the charges alleged in the indictment described in the press release below.***" Doc. No. 375-1. On July 10, 2023, the Minnesota Lawyer ran an article entitled, "Federal court jury acquits concrete contractor in bid-rigging case." Doc. No. 375-2.

## DISCUSSION

[¶ 3]   The Defendants moved for a permanent injunction, asking the Court to prohibit the United States from continuing to publish the Press Release. Doc. No. 367, 369. Before getting to the merits, however, the Defendants provide argument regarding this Court's jurisdiction over the matter. Doc. No. 369, pp. 12-14. The Defendants argue the Court has ancillary jurisdiction over this issue because the matter relates to the circumstances surrounding the criminal complaint. Rather than address the Court's jurisdiction, the United States ignores this argument and simply contends the Defendants fail to establish the grounds for a permanent injunction. See Doc. No. 376. As an initial matter, the Court will address its jurisdiction.

[¶ 4]   "The doctrine of ancillary jurisdiction 'recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them.'" United States v. Afremov, 611 F.3d 970, 975 (8th Cir. 2010) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1998)). "[A]ncillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court." Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 376 (8th Cir. 1978). There are two purposes for which a court may exercise ancillary jurisdiction: "(1) to permit disposition by a

single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." Peacock v. Thomas, 516 U.S. 349, 354 (1996) (quoting Kokkonen, 511 U.S. at 379-80)). Because the Defendants assert this Court has jurisdiction, the Defendants bear the burden of establishing their cause of action "lies within the limited jurisdiction of the federal courts." United States v. Afremov, 611 F.3d 970, 975 (8th Cir. 2010). Despite the United States' failure to respond to the Defendants' jurisdictional argument, the Court's limited jurisdiction is not subject to waiver. Id. at 975.  The Court has discretion to exercise ancillary jurisdiction. Jenkins v. Kansas City Missouri School Dist., 516 F.3d 1074, 1083 (8th Cir. 2008) ("We believe that reviewing for abuse of the district court's discretion is appropriate in the context of the exercise of ancillary jurisdiction as well.")

[¶ 5]   The Court will not invoke ancillary jurisdiction in this matter because the Defendants have failed to meet their burden of showing the claim "lies within the limited jurisdiction of the federal court." Afremov, 611 F.3d at 975. The Defendants provide argument in a footnote that the Court has ancillary jurisdiction because the acquittals and the Press Release are directly connected because the Press Release allegedly says the Defendants are guilty of the crimes charged. Doc. No. 376, p. 8, n.4. The Court disagrees.

[¶ 6]   Nowhere in the Press Release does it claim the Defendants are guilty of the crime charged. The title reads, "Minnesota Concrete Company and its CEO Indicted for Rigging Bids for Public Contracts." Doc. No. 375-1, p. 1. The Press Release goes on to indicate the nature of the charges "[a]ccording to court documents filed in the U.S. District Court in Minneapolis." Id. Assistant Attorney General Jonathan Kanter of the United States Department of Justice is quoted describing bid-rigging schemes generally and his appreciation for the Indictment. Id. at p. 2. Luis Quesada,

Assistant Director of the FBI's Criminal Investigative Division, qualified his description of the facts as "allegedly" occurring. Id. But most importantly, the Press Release included a note at the top that "[t]he Defendants in this case, Steven Dornsbach and Kamida Inc., were acquitted by a jury of the charges alleged in the indictment described in the press release below." Id. at p. 1.

[¶ 7]  Having reviewed the Press Release, the Court concludes it accurately states what occurred. The Defendants were accused of violations of the Sherman Act for acts they allegedly did. At the very beginning of the Press Release, it affirmatively clarifies the Defendants were acquitted by the jury. Nevertheless, an acquittal does not mean the Defendants absolutely did not engage in the alleged conduct. United States v. One Assortment of 89 Firearms, 465 U.S. 354, 361 (1984) ("But an acquittal on criminal charges does not prove that the defendant is innocent."). Rather, "it merely proves the existence of a reasonable doubt as to his guilt." Id. A jury verdict in a criminal action does not negate proof of the conduct by some lower standard of proof of the crime, such as preponderance of the evidence or, in this case, probable cause. Id. at 362 ("[T]he jury verdict in the criminal action did not negate the possibility that a preponderance of the evidence could show that [the defendant] engaged in an unlicensed firearms business.").

[¶ 8]  The Press Release simply reiterate the charges in the Indictment. There is nothing inherently inaccurate in its contents. Indeed, when an Indictment is filed, a grand jury concluded the United States had probable cause to charge a defendant with a crime. Kaley v. United States, 571 U.S. 320, 328 (2014) ("[t]he grand jury's singular role in finding probable cause is necessary to initiate prosecution for a serious crime."); United States v. McGhee, 944 F.3d 740, 743 (8th Cir. 2019) ("Probable cause does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime."). The acquittals in this case does not mean the Indictment ever lacked probable cause because probable

cause is a lesser standard of proof. See One Assortment of 89 Firearms, 465 U.S. 354 at 361. The Press Release with the outcome at the top does not contradict the acquittals, it informers the reader of the outcome. Accordingly, the Defendants' argument fails.

[¶ 9]    Additionally, the Defendant has not cited a single case in which a court has found it has ancillary jurisdiction to enjoin the publication of what appears to be a legally and factually accurate news report that published prior to acquittal and includes an update that a jury found the defendants not guilty. The cases the Defendants rely on do not provide the Court with sufficient conviction it should assert ancillary jurisdiction over the claim. See, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (finding courts have various inherent powers to (1) punish for contempt; (2) vacate its own judgment when fraud had been perpetrated upon the court; (3) bar a disruptive defendant from the courtroom; (3) dismiss a case based on *forum non conveniens*; and (4) to *sua sponte* dismiss a case for failure to prosecute); Sheppard v. Maxwell, 384 U.S. 333, 361 (1966) (finding courts have the power to prohibit prejudicial public comments on the case before the court); United States v. Hudson & Goodwin, 7 Cranch 32, 32 (1812) (the courts "have the power to fine for contempts, to imprison for contumacy, and to enforce the observance of their orders"); Thompson v. Covington, 47 F.3d 974, 975 (8th Cir. 1995) (per curiam) ("Post-conviction filings for the return of property seized in connection with a criminal case are treated as civil equitable actions, and the district court where the claimant was tried has subject-matter jurisdiction ancillary to its criminal jurisdiction to hear the equitable action."); United States v. Morris, 259 F.3d 894, 900-01 (7th Cir. 2001) (finding the court's inherent power permitted it to impose condition that the defendant shall not contact the victim while the defendant was incarcerated as part of the sentencing judgment); United States v. Brown, 218 F.3d 415, 423-24 (5th Cir. 2000) (noting "trial courts have an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity" (citation

and quotation marks omitted)); United States. v. Grigsby, 737 F. App'x 375, 377 (10th Cir. 2018) (unpublished) ("The district court's no-contact order is a civil injunction pursuant to its ancillary jurisdiction—not a part of Grigsby's sentence that he must attack under § 2255."); United States v. Mitchell, 683 F.Supp.2d 427, 429 n.5 (E.D. Va. 2010) ("Examples of federal courts' exercise of ancillary jurisdiction include the award of costs and attorneys fees in both civil and criminal cases, the issuance of injunctions to effectuate court orders or to preserve the status quo pending resolution of a claim.").

[¶ 10] Contrary to those cases, this case involves a request to enjoin the United States from further publication of what appears to be a legally and factually accurate Press Release. None of the cases relied upon by the Defendant involves a similar request. Each case is, therefore, unpersuasive. Accordingly, the Defendants have failed to meet their burden to establish this Court should exercise ancillary jurisdiction. In its discretion, therefore, the Court declines to invoke ancillary jurisdiction over this matter.[1]

## CONCLUSION

[¶ 11] For the reasons set forth above, the Defendants' Motion for Permanent Injunction is **DENIED**.

[¶ 12] **IT IS SO ORDERED**.

DATED October 5, 2023.

Daniel M. Traynor, District Judge
United States District Court

---

[1] If the Defendants believe their rights have been violated by the continued publication of the Press Release, they are free to file a separate civil cause of action.